The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Roberto RAMOS, Defendant–Appellee.

No. 00SA159.

Supreme Court of Colorado,
En Banc.

Sept. 11, 2000.

Mark T. Adams, District Attorney, Thirteenth Judicial District, Derek Regensburger, Deputy District Attorney, Sterling, Colorado, Attorneys for Plaintiff–Appellant.

David S. Kaplan, Colorado State Public Defender, Shannon Lyons, Deputy State Public Defender, Greeley, Colorado, Attorneys for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

The People bring an interlocutory appeal under C.A.R. 4.1 to contest the trial court's order suppressing evidence seized pursuant to an investigatory stop of the defendant's truck. We hold that the investigating officer retained the authority to detain the defendant and check the validity of the defendant's identifying information even though the officer expressed his decision not to issue the defendant a traffic citation. We therefore reverse the trial court's order suppressing the evidence seized during a search of the defendant's vehicle. However, we return this case to the trial court to complete the hearing on the defendant's motion to suppress, to make findings of fact, and to make additional orders not inconsistent with this opinion.

I.

We begin our analysis with a brief review of the proceedings in the trial court and proceed to relate the facts of the case.

The sole witness at the hearing held on the defendant's motion to suppress evidence was Colorado State Patrol Trooper Leonard Fleckenstein. The officer's testimony at key points was imprecise, and examination of the witness by both counsel sometimes failed to elucidate the sequence of events in this case. In an apparent attempt to understand the sequence of events, the court interrupted the cross-examination of Fleckenstein to ask a few questions of the witness. After eliciting some responses pivotal to the court's resolution of the motion before it, the court effectively terminated the hearing to discuss the legal issue that had emerged from the testimony. This legal discussion with the attorneys evolved into the court's ruling on the motion. Thus, the parties did not finish their presentation and the court did not distinctly and separately make any formal findings of fact.

Our understanding of the facts in this case is based on inferences from the court's legal analysis and the actual testimony that supports the court's discussion. We recognize that a complete presentation of the relevant evidence after the return of this case to the trial court could result in some differences in the findings. This is particularly so because Fleckenstein testified that the entire encounter was recorded on videotape and we do not know whether that videotape will be introduced in the proceedings after this case is returned to the trial court.

On November 6, 1999, Fleckenstein stopped the defendant's truck on eastbound I–76. Immediately prior to the stop, Fleckenstein had observed the vehicle traveling approximately sixty miles per hour in a seventy-five mile per hour zone and weaving once over the shoulder line of the highway.[1] Fleckenstein explained to the defendant, Roberto Ramos, the reason for the stop. Ramos informed the officer that he was traveling from Las Vegas and was tired, having gotten very little sleep. Fleckenstein then requested Ramos's license, registration, and proof of insurance and asked the defendant to wait near the back of the truck. The officer and Ramos talked for a few minutes about several topics, including the defendant's travel plans. In the course of this initial contact, Fleckenstein determined that Ramos was not under the influence of alcohol. Fleckenstein then informed Ramos that

---

1. Driving outside the boundaries of a marked lane constitutes a class A traffic infraction. *See* § 42–4–1007(2), 11 C.R.S. (1999).

he would not cite him for weaving. The officer then returned to his cruiser and ran a computer check on Ramos, which indicated that his license and registration were valid. While waiting for the computer check to conclude, Fleckenstein filled out a consent to search form.

Following the computer check, the officer returned to Ramos, handed back the license, registration, and proof of insurance, and informed the defendant that he was free to leave. Fleckenstein then asked for Ramos's permission to search the truck. According to the officer, Ramos gave both verbal and written consent to search. Investigation by the officer and, subsequently, a further search by a dog trained in drug detection led to the discovery of marijuana in Ramos's truck.

The trial court held that the officer's initial stop of the defendant was supported by reasonable suspicion, and thus was permissible. Relying on our decision in *People v. Redinger*, 906 P.2d 81 (Colo.1995), the court further held that Fleckenstein's authority to detain Ramos ended once Fleckenstein decided not to issue a traffic citation and expressed his decision to the defendant. The trial court concluded the suppression hearing before determining whether the defendant consented to a search of his truck and whether the ensuing search exceeded its proper scope. Because the trial court held that Fleckenstein illegally detained Ramos, the court suppressed the evidence and statements seized pursuant to the detention.

The prosecution brought this interlocutory appeal of the trial court's suppression order under C.A.R. 4.1.

## II.

The trial court held that the defendant was illegally detained because, once Fleckenstein decided not to issue a traffic citation and expressed his decision to Ramos, the officer no longer had a legitimate basis for requesting identifying information and detaining the defendant while checking the validity of the defendant's information. We believe that the trial court's reasoning conflicts with our analysis in several prior cases.

Police officers are entitled under the Fourth Amendment to conduct an investigatory stop of a motorist if they have reasonable suspicion that the motorist has committed or is about to commit a crime, if the purpose of the detention is reasonable, and if the detention itself is reasonable when considered in light of the purpose for the investigatory stop. *See People v. Rodriguez*, 945 P.2d 1351, 1360 (Colo.1997); *see also Redinger*, 906 P.2d at 83; *Stone v. People*, 174 Colo. 504, 509, 485 P.2d 495, 497 (1971). Objective standards of reasonableness guide our inquiry as to the propriety of an officer's decision to conduct an investigatory stop. *See People v. Mendoza–Balderama*, 981 P.2d 150, 157 (Colo.1999); *Rodriguez*, 945 P.2d at 1359–60. While the officer's subjective assessment of the facts may assist a court in arriving at an understanding of the situation confronting the officer at the time of the search, or may affect the officer's credibility, his or her subjective motives do not negate the propriety of an objectively reasonable search. *See Rodriguez*, 945 P.2d at 1360. We consistently have applied the objective reasonableness standard in determining the propriety of a search or seizure. *See, e.g., People v. Daverin*, 967 P.2d 629, 632 (Colo.1998); *People v. Dumas*, 955 P.2d 60, 63 (Colo.1998); *People v. Altman*, 938 P.2d 142, 146 (Colo.1997); *People v. Hauseman*, 900 P.2d 74, 78 (Colo.1995); *People v. Weston*, 869 P.2d 1293, 1298 (Colo. 1994); *People v. Ratcliff*, 778 P.2d 1371, 1376 (Colo.1989).

In *Redinger*, 906 P.2d at 84, we first considered the question "of the extent to which an official who has properly initiated an investigatory stop of a motor vehicle based on reasonable suspicion that the driver thereof has violated the motor vehicle law may detain and interrogate the driver after the official learns that the initial suspicion is ill-founded." A state patrol officer stopped Redinger because he did not see a license plate or temporary sticker on the rear of Redinger's vehicle. *See id.* at 82. After stopping the defendant's vehicle, and as he approached the vehicle, the officer observed a valid temporary registration plate displayed in the rear window. *See id.* The officer then questioned Redinger and requested his driver's license, registration, and proof of insurance.

*See id.* As the defendant was gathering these documents, a small bag containing illegal drugs fell out of his pocket. *See id.* The officer seized the bag and arrested Redinger for possession of a controlled substance. *See id.*

The trial court granted Redinger's motion to suppress the drug evidence on the grounds that, after the officer determined that the defendant had not committed a traffic violation, he had no authority to detain the defendant and question him. *See id.* at 83. We upheld the trial court's decision because the purpose of the investigation had been completed. We stated that:

> The basis for the principle that, consistent with Fourth Amendment jurisprudence, a police officer may detain and interrogate a driver of a motor vehicle on less than probable cause is the conclusion that narrowly limited governmental intrusion into the conduct of motor vehicle drivers is warranted when a government official has reasonable grounds to investigate the that conduct. *When, as here, the purpose for which the investigatory stop was instituted has been accomplished and no other reasonable suspicion exists to support further investigation, there is no justification for continued detention and interrogation of citizens.*

*Id.* at 85–86 (emphasis added). Because the officer, prior to questioning Redinger, determined that a registration plate was properly displayed on the defendant's car, the basis for the reasonable suspicion that caused the investigatory stop dissipated and the purpose for the stop was satisfied. *See id.* at 86. Thus, the officer unjustifiably required the defendant to produce information. *See id.* Consequently, the evidence seized pursuant to the illegal detention was inadmissible. *See id.*

We have since returned to the issue presented in *Redinger.* In *Altman,* 938 P.2d at 143, two state patrol officers stopped the defendant's car after observing that the rear license plate was obscured by dirt and that the windshield was cracked. After determining that Altman's license and registration were valid, the officers noticed that the defendant was engaging in what appeared to be furtive behavior. *See id.* at 144. Upon searching the car, the officers found illegal drugs and subsequently arrested Altman. *See id.* The trial court suppressed the evidence seized pursuant to the arrest on the grounds that it did not believe that the officers' search of the car was caused by subjective concerns for their safety. *See id.*

We reversed the trial court's suppression order. *See id.* at 147. Our analysis was grounded on the principle that the propriety of a search is determined by whether the search is objectively reasonable. *See id.* at 146. Therefore, the trial court's assessment that the officers did not have a subjective concern for their own safety was irrelevant to evaluating the legality of the search. *See id.* The defendant's actions created an objectively reasonable basis for searching his car; therefore, the evidence was properly obtained. *See id.* at 146–47.

We also held that the officers were empowered to detain the defendant even after establishing that his license and registration were valid. *See id.* at 145. The officers properly initiated an investigatory stop in light of the cracked windshield and obscured license plate, both violations of motor vehicle laws. *See id.* Unlike *Redinger,* under these facts, the "purpose of the investigatory stop had not dissipated when [the officers] questioned Altman." *Id.* The officers consequently were entitled to require the defendant to produce his license, vehicle registration, and proof of insurance. *See id.* Therefore, the defendant had not been improperly detained when the illegal drugs were discovered in his car. *See id.* at 146–47.

In *Rodriguez,* '945 P.2d at 1355, we reaffirmed the principle that if an officer has an objectively reasonable basis to believe that a driver has committed a traffic offense, the officer may request identifying information from the driver. The officer's subjective decision not to issue a traffic citation does not strip her of the authority to make further inquiries of the driver. *See id.* at 1360. In *Rodriguez,* the officer, at the time he requested information of the defendant, had an objectively reasonable basis to suspect that the defendant had committed the traffic offense of weaving. *See id.* He thus retained

the legal authority to detain the defendant while checking the validity of the defendant's identifying information. *See id.* Consequently, we reversed the court of appeals' judgment that the search of the defendant's vehicle was illegal because the searching officer lacked the authority to solicit identifying information from the defendant and to make further inquiries. *See id.*[2]

■ In *Rodriguez* we also set forth several factors to consider when determining if an investigatory stop is reasonably related to its purpose: (1) the length of the detention; (2) whether the officer diligently pursued the investigation; (3) whether the suspect was moved from one place to another; (4) whether there were alternative, less intrusive means available and whether the officer unreasonably failed to adopt them. *See id.* at 1361–62. These factors typically are relevant to the reviewing court's analysis and are nonexhaustive. *See id.* at 1362 (stating that to determine whether the parameters of an investigatory stop are exceeded, reviewing courts are to consider "at least four circumstances").

■ In sum, our prior decisions establish that if, at the time the officer requests identifying information from a driver, the officer has an objectively reasonable suspicion that the driver has committed or is about to commit an offense, then the officer possesses the authority to request such information and to detain the driver while checking the validity of the information. *See id.; Altman,* 938 P.2d at 147. The investigatory stop must be reasonably related in scope and character to its purpose, as typically determined by application of the *Rodriguez* factors. *See Rodriguez,* 945 P.2d at 1361–62. Conversely, if the officer does not have an objectively reasonable suspicion that the driver has committed an offense, the officer may not detain the driver to request identifying information or to check its validity. *See Redinger,* 906 P.2d at 85.

We now apply these principles to the case at hand.

### III.

■ We hold that the investigating officer in this case was authorized to request identifying information from the defendant and to detain the defendant while checking the validity of the defendant's identification. At the time Fleckenstein requested Ramos's license, vehicle registration, and proof of insurance, Fleckenstein had an objectively reasonable basis to believe that Ramos had committed the traffic offense of weaving. Our prior decisions compel the conclusion that the officer had the authority to request this information and to detain Ramos while checking the information's validity. *See Rodriguez,* 945 P.2d at 1355; *Altman,* 938 P.2d at 146–47. That Fleckenstein had made the subjective decision not to issue a traffic citation before checking the requested information is irrelevant to a proper determination of the validity of the investigatory detention. *See Rodriguez,* 945 P.2d at 1360 (stating that a police officer, after deciding not to issue a citation for the traffic offense under investigation, was authorized to make inquiries reasonably related in scope and character to the offense).

The difference between this case and the circumstances in *Rodriguez* and *Altman* is that here Fleckenstein communicated his decision not to cite Ramos before running a computer-check of the identifying information, whereas in *Rodriguez* and *Altman* there was no evidence that the officers expressed their decision. However, we do not perceive this difference to be significant. The salient question under the Fourth Amendment is whether the searching officer had an objectively reasonable basis to stop the vehicle and whether the scope and duration of the detention is reasonable. Neither remaining silent about the decision not to issue a citation nor communicating the decision bears on the objective reasonableness of the officer's suspicion that an offense has been committed.

■ The trial court reasoned that the "subjective intent" we have focused on before

---

**2.** We held the search to be invalid on other grounds. *See Rodriguez,* 945 P.2d at 1365 (Colo. 1997).

was the officers' motive for investigating, whereas here Fleckenstein's subjective intent was not to issue a citation. However, in *Rodriguez,* the "subjective intent" of the officer was his decision not to issue a citation. There, we held that the decision not to cite the driver is not determinative of whether the search or seizure is permissible under the Fourth Amendment. *See Rodriguez,* 945 P.2d at 1359–1360.

Having reaffirmed our view that the subjective intent of the officer not to issue a citation is not a factor in determining the validity of an investigatory stop, we also reiterate that the factors delineated in *Rodriguez* may assist in a determination as to whether an investigatory stop is reasonably related in scope and character to its purpose. *See Rodriguez,* 945 P.2d at 1361–62. However, we do not find it necessary to discuss the application of these factors to the case at hand because our prior decisions clearly establish that requesting and checking identifying information pursuant to a valid traffic stop is reasonably related to the scope and character of the stop. *See id.* at 1360 (stating that if this procedure does not "unreasonably extend the duration of the temporary detention," an officer may request a driver's license, vehicle registration, and proof of insurance and check the documents' validity during a valid traffic stop); *Altman,* 938 P.2d at 145 (stating that since the purpose of the investigatory stop had not dissipated when the documents were requested, the officer acted within the scope and character of the investigatory stop by requesting the information). The application of the *Rodriguez* factors to the facts before us does not support the conclusion that Fleckenstein's conduct exceeded the purpose of the investigatory stop. Consequently, we hold that the officer had the lawful authority to detain Ramos and check the validity of his identifying information after the officer expressed his subjective intent not to cite Ramos for weaving.

We therefore return this case to the trial court for further proceedings. The trial court did not determine whether Ramos consented to the search of his vehicle, the scope of any consent, or whether the subsequent searches were supported by probable cause.

Accordingly, these issues are not before us. Further, as noted above, the trial court ended the suppression hearing once Fleckenstein testified that he told Ramos he had decided not to issue a citation for weaving. Thus, the trial court may take additional testimony and make the findings and orders necessary to resolve the motion to suppress.

## IV.

The order of the trial court is reversed and the case is remanded for proceedings consistent with this opinion.