Opinion by
 

 Judge DAILEY.
 

 Defendant, Honorato N. Valencia-Alvarez, appeals the judgment of conviction entered upon jury verdicts finding him guilty of seven drug offenses. He also appeals the sentence. We affirm.
 

 Following an encounter with two law enforcement officers at a gas station, and a subsequent search of his car, defendant was charged with, and later convicted of (1) possession with intent to distribute 1000 grams or more of a schedule II controlled substance (cocaine), a class three felony; (2) special offender-importation of 1000 grams or more of a schedule II controlled substance (cocaine), a class two felony sentence enhancer; (8) possession of 1000 grams or more of a schedule II controlled substance (cocaine), a class four felony; (4) conspiracy to possess with intent to distribute 1000 grams or more of a schedule II controlled substance (cocaine), a class three felony; (5) conspiracy to possess 1000 grams or more of a schedule II controlled substance (cocaine), a class three felony; (6) possession of marijuana, a class two petty offense; and (7) possession of drug paraphernalia, a class two petty offense.
 

 The trial court merged the two felony possession convictions and the two conspiracy convictions and imposed concurrent terms of forty years imprisonment for each of them.
 
 *1111
 
 The court imposed $100 fines for each petty offense.
 

 I. Pretrial Motions
 

 Defendant filed three pretrial motions: (1) a motion to suppress the evidence against him, in which he asserted his initial encounter with one of the officers, and the subsequent search of his car, violated his Fourth Amendment right to be free from unreasonable searches and seizures; (2) a motion to dismiss the charges against him; and (8) a related motion for specific discovery, in which he asserted that this encounter also violated his Fourteenth Amendment right to equal protection of the laws because it was racially motivated.
 

 A. Motion to Suppress
 

 Defendant contends that the trial court erred in denying his motion to suppress on the ground that his initial encounter with the officer was consensual. We disagree.
 

 Initially, we note that defendant does not appear to challenge the trial court's finding that the search of his vehicle was consensual. Therefore, we do not address that aspect of the court's ruling.
 

 In reviewing a trial court's suppression order, we defer to the court's factual findings but review its legal conclusions de novo. See People v. Hardrick, 60 P.8d 264, 266 (Colo.2002).
 

 Colorado has recognized three categories of police-citizen encounters: (1) arrests; (2) investigatory stops or detentions; and (8) consensual interviews. Only arrests and investigatory stops or detentions constitute seizures implicating Fourth Amendment protections. People v. Jackson, 39 P.3d 1174, 1179 (Colo.2002).
 

 An investigatory stop or detention is an encounter in which an officer contacts an individual to question him or her or to conduct a pat-down search for weapons. Section 16-38-1038, C.R.S.2008; People v. King, 16 P.3d 807, 814 (Colo.2001). Police officers are entitled to conduct an investigatory stop of a motorist if they have reasonable suspicion that the motorist has committed a traffic violation. People v. Ramos, 13 P.3d 295, 299 (Colo.2000).
 

 Here, the trial court found, with record support, that defendant had committed a traffic offense by failing to come to a complete stop at a stop sign prior to being contacted by law enforcement officers. Because that offense alone was sufficient justification for the encounter, see People v. Redinger, 906 P.2d 81, 85 (Colo.1995)(commissgion of a traffic offense, by itself, authorizes a reasonable suspicion stop), we conclude that the trial court did not err in denying defendant's motion to suppress. See People v. Huynh, 98 P.3d 907, 2004 WL 489360 (Colo.App. No. 01CA2140, Mar. 11, 2004)(upholding ruling for reasons different from those advanced by the trial court).
 

 B. Motions to Dismiss and for Specific Discovery
 

 Defendant also contends that the trial court erred in denying his motions to dismiss and for specific discovery on the ground that his initial encounter with law enforcement officers did not constitute a "stop" under the Fourth Amendment and that it, therefore, did not violate his right to be free from unreasonable searches and seizures. We uphold the court's ruling, but on different grounds. See People v. Huynh, supra.
 

 The issue whether the selective enforcement of a law based on race violates the Equal Protection Clause of the Fourteenth Amendment appears to be an issue of first impression in Colorado. Therefore, we rely primarily on federal case law to resolve defendant's claim.
 

 Whether an encounter with law en-foreement is in violation of the Fourth Amendment does not resolve the issue whether it was racially motivated in violation of the Equal Protection Clause of the Fourteenth Amendment. See Whren v. United States, 517 U.S. 806, 818, 116 S.Ct. 1769, 1774, 185 L.Ed.2d 89 (1996); see also Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1166 (10th Cir.2008).
 

 The Equal Protection Clause precludes selective enforcement of the law based
 
 *1112
 
 on race or ethnicity. Whren v. United States, supra. While it is appropriate that law enforcement identify any problem of racial profiling and undertake administrative steps to eliminate its improper use in law enforcement, it is quite another thing to "craft judicially manageable standards for determining liability," because of the broad discretion "vested in executive branch officials to determine when to prosecute, and by analogy, when to conduct a traffic stop or initiate an arrest." Marshall v. Columbia Lea Reg'l Hosp., supra, 345 F.3d at 1167 (citation omitted).
 

 A defendant alleging unequal enforcement of a facially neutral statute must show both that the enforcement had a discriminatory effect and that it was motivated by a discriminatory intent. United States v. Armstrong, 517 U.S. 456, 468, 116 S.Ct. 1480, 1488, 184 L.Ed.2d 687 (1996).
 

 To obtain discovery on this issue, the defendant need not establish a prima facie case of selective enforcement. The defendant must, however, provide some evidence tending to show the existence of both discriminatory effect and discriminatory intent. See United States v. Armstrong, supra; cf. People v. Kurz, 847 P.2d 194, 197 (Colo.App.1992).
 

 To establish discriminatory effect in a motion for discovery on a selective enforcement claim based on race, the defendant must provide credible evidence that a similarly situated individual of another race or ethnicity could have been subjected to the same law enforcement action as the defendant, but was not. See Umited States v. Armstrong, supra, 517 U.S. at 465, 116 S.Ct. at 1487; United States v. James, 257 F.3d 1178, 1179 (10th Cir.2001).
 

 Here, in support of both his motion to dismiss and his motion for specific discovery, defendant provided a document showing that of the 31 highway interdiction arrests this officer had made in 2000, 61% had been arrests of minorities: 12, or 39%, were arrests of Caucasians; another 12, or 39%, were arrests of Hispanics; 6, or 19%, were arrests of African-Americans; and 1, or 8%, was an arrest of an Asian-Pacific. Defendant argued, however, that it appeared at least 5 of these 12 Caucasians were actually Hispanics, which raised the percentage of minorities to 77%. Nevertheless, defendant acknowledged that this document "does not provide the number of stops [the officer] made in the year 2000, or the race of the motorists involved in stops not resulting in arrests."
 

 We conclude that, because the evidence defendant provided does not address the critical issue whether the officer could have stopped a similarly situated Caucasian but did not, defendant failed to meet the threshold showing of discriminatory effect. Seq, eg., United States v. Armstrong, supra (evidence that all 24 crack cocaine possession or conspiracy cases prosecuted in one court involved black defendants was insufficient to make the threshold showing required to obtain discovery on a selective enforcement claim); United States v. Alcaraz-Arellano, 302 F.Supp.2d 1217, 1228 (D.Kan.2004)(evidence that deputy stopped more Hispanics than did other officers in sheriffs department was insufficient to entitle the defendant to discovery on selective enforeement claim). Consequently, we need not address whether defendant made the required showing of discriminatory intent. See United States v. Armstrong, supra; United States v. James, supra.
 

 We therefore conclude that the trial court properly denied defendant's motion for specific discovery.
 

 We further conclude that the trial court properly denied defendant's motion to dismiss. Because defendant did not make the threshold showing required for discovery relating to his equal protection claim, he necessarily failed to make a prima facie showing of selective enforcement.
 

 II. Motion for Sanctions
 

 Defendant next contends that the trial court erred in denying his request at trial for sanctions, including a mistrial, based on alleged prosecutorial misconduct. We are not persuaded.
 

 
 *1113
 
 A trial court is in the best position to evaluate the effects on a jury of any allegedly prejudicial statements made by a prosecutor. People v. Daley, 97 P.8d 295, 2004 WL 439994 (Colo.App. No. Mar. 11, 2004). Therefore, the trial court has broad discretion to grant or deny a mistrial or sanctions, and its decision will not be disturbed on appeal absent an abuse of that discretion. People v. Dembry, 91 P.3d 481, 436 (Colo.App.2008).
 

 Here, during direct examination of one of its witnesses, the prosecution requested that a certain exhibit be published to the jury. However, defense counsel was conferring with defendant at the time. Therefore, the trial court instructed the prosecutor to wait "just a second." The prosecutor then stated: "We would note that copies of this exhibit were provided to defense counsel."
 

 Defense counsel did not object to publishing the exhibit; however, he requested sanctions against the prosecution, and a mistrial, for its remark that copies of the exhibit had been provided to him. Specifically, defense counsel argued that the prosecution's remark had prejudiced the defense by creating the misleading impression that counsel had somehow been caught by surprise with this evidence and that he, therefore, needed to consult with his client about it. The prosecutor responded that he too had been concerned about the jury's impression of the delay in the proceeding and that he was simply trying to correct any misimpression that he had "sprung" this piece of evidence on the defense at the last minute without giving counsel time to respond to it.
 

 The trial court determined that both counsel had presented rational arguments for their respective positions and that, while the prosecutor's remark had been "gratuitous and unnecessary," it did not rise to "the level necessary to justify a mistrial or any other sanction."
 

 We perceive no abuse of discretion in this ruling. We, like the trial court, cannot conclude that the prejudice, if any, to the defense from this isolated remark was so severe as to require either a mistrial or a sanction.
 

 Nor do we find any error in the trial court's failure sua sponte to instruct the jury to disregard the challenged remark. See People v. Ned, 928 P.2d 271, 275-176 (Colo.App.1996)(because defendant did not request curative instruction, trial court did not commit plain error in failing to give one sua sponte following witness's brief emotional outburst).
 

 III. Sentencing
 

 Defendant finally contends that his forty-year prison sentence is excessive and that it is disproportionate to the ten-year sentence his codefendant received. We are not persuaded.
 

 A trial court has broad discretion in imposing a sentence. Therefore, on appellate review, a trial court's sentencing decision will be accorded great deference. Only in exceptional cases will the appellate court substitute its judgment for that of the trial court. People v. Fuller, 791 P.2d 702, 708 (Colo.1990).
 

 In exercising its sentencing discretion, a trial court must consider the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law, the deterrence of crime, and the protection of the public. People v. Fuller, supra; People v. Gagnon, 997 P.2d 1278, 1284 (Colo.App.1999).
 

 Further, because sentencing is individualized, there is no requirement that codefendants receive similar sentences. People v. Campbell, 58 P.3d 1080, 1088 (Colo.App.2002), aff'd, 73 P.3d 11 (Colo.2008). The individual treatment of each codefendant within the statutory sentencing limits is discretionary with the trial court based on the degree of involvement, previous record, and rehabilitative needs of each. People v. Pauldino, 187 Colo. 61, 68, 528 P.2d 884, 386 (1974).
 

 Here, the applicable sentencing range for defendant's felonies was sixteen to forty-eight years. The trial court imposed forty years. The court explained that the sentence was appropriate because defendant had at least three prior drug-related felony convictions; he had imported a substantial amount of cocaine into this country with the
 
 *1114
 
 intent to distribute it; and his previous sentences had not deterred him from continuing to be in this country illegally and from continuing to distribute illegal drugs.
 

 Moreover, the court distinguished defendant's behavior from his codefendant's behavior by pointing out that the codefendant had only pleaded guilty to possession of a schedule II controlled substance over twenty-five grams with intent to distribute; "(ble was not convicted of possessing 1000 or more grams, and he was not convicted of importation, which substantially raises the stakes." The court also noted that the codefendant had only two prior felony convictions, whereas defendant had at least three.
 

 Based on our review of the record, we conclude that defendant's forty-year sentence is not excessive and that there is a rational basis for the disparity in defendant's and the codefendant's sentences. Defendant's sentence is within the range required by law, is based on appropriate considerations as reflected by the record, and is factually supported by the cireumstances of the case. See People v. Fuller, supra.
 

 Accordingly, the judgment and sentence are affirmed.
 

 Judge GRAHAM and Justice ERICKSON
 
 *
 
 concur.