24CA0524 Peo v Greggs 02-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0524
Larimer County District Court No. 16CR1884
Honorable Stephen J. Jouard, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Lawrence Greggs,

Defendant-Appellant.

---

SENTENCE AFFIRMED

Division II
Opinion by JUDGE KUHN
Fox and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

---

Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Tara Jorfald, Alternate Defense Counsel, Maya Arriaga Martin, Alternate Defense Counsel, Lakewood, Colorado, for Defendant-Appellant

¶ 1     Defendant, Lawrence Greggs, pleaded guilty to second degree murder and aggravated robbery. After successful postconviction proceedings, the court resentenced him to sixty-four years in the custody of the Department of Corrections. He now appeals this sentence. We affirm.

## I.     Background

¶ 2     In August 2016, Greggs arranged a meeting with Devon Smeltz, the victim, to buy drugs. Greggs and a couple of his friends, Michael Gresham and Joshua Baker, planned a trip from Ohio to Colorado to meet with Smeltz. Before heading to Colorado, the group drove to Kentucky in a rented Jeep, where Greggs traded drugs for an AR-15 rifle. Then they headed to Colorado with Greggs updating Smeltz about their whereabouts along the way. The group eventually arrived at a Walmart parking lot in Colorado around 2:40 a.m., where they had planned to buy drugs from Smeltz. Greggs parked the Jeep next to Smeltz's white Mercedes.

¶ 3     After an alleged altercation in the parking lot, Greggs shot Smeltz in the torso five times. Smeltz was still "twitching" after the first five shots, so Greggs returned to the Jeep to reload his gun, "with the assistance of . . . Baker." Greggs then fired two more

1

shots "into the back of Smeltz's head." Gresham and Greggs moved Smeltz's dead body to the backseat of his Mercedes. Shortly after the shooting, both Greggs and Gresham recorded cell phone videos seeming to boast about the shooting. The group then stole Smeltz's clothing, jewelry, gun, and car, and headed toward Smeltz's home, with Smeltz's body still in the backseat of the Mercedes.

¶ 4 When they got to Smeltz's home, Greggs broke a window in an attempt to get inside. However, the group quickly realized that Smeltz's mother and her dog were home, so they fled. Smeltz's mother called the police after she heard a "loud crash" and "saw a shadowy figure in the backyard." She told the police that she was concerned because her son was missing and that he was involved in some "sketchy" drug activity. At some point, the group dumped Smeltz's body at a dairy farm. The police eventually declared Smeltz a missing person.

¶ 5 The day after the killing, the Illinois State Patrol pulled over the Jeep and Smeltz's Mercedes. Baker and Gresham were in the Mercedes and Greggs was driving the Jeep. Troopers noticed blood in the backseat of the Mercedes, which they later determined belonged to Smeltz. When interviewed, Greggs, Gresham, and

2

Baker gave inconsistent statements and did not reveal the location of Smeltz's body.

¶ 6      After an investigation, the prosecution charged Greggs with first degree murder after deliberation, first degree felony murder, aggravated robbery, criminal attempt to commit second degree burglary, tampering with physical evidence, and abuse of a corpse. *See* § 18-3-102(1)(a), C.R.S. 2025; § 18-3-102(1)(b), C.R.S. 2016;[1] § 18-4-302(1)(b), C.R.S. 2025; § 18-4-203(1), (2)(a), C.R.S. 2025; § 18-2-101, C.R.S. 2025; § 18-8-610(1)(a), C.R.S. 2025; § 18-13-101, C.R.S. 2016.[2]

¶ 7      Greggs resolved the case through a plea deal. He signed a plea agreement and pleaded guilty to an amended count of second degree murder and the aggravated robbery count. *See* § 18-3-103(1), C.R.S. 2025; § 18-4-302(1)(b). The plea agreement indicated a sentencing range of sixteen to eighty years in the

---

[1] Felony murder was reclassified as second degree murder in 2021. *See* Ch. 58, secs. 1-2, §§ 18-3-102, -103 2021 Colo. Sess. Laws 235-36.

[2] Abuse of a corpse was reclassified from a class 2 misdemeanor to a class 6 felony in 2020. *See* Ch. 100, sec. 2, § 18-13-101, 2020 Colo. Sess. Laws 387-88.

custody of the Department of Corrections. The court sentenced Greggs to a total of eighty years, forty-eight years for second degree murder and thirty-two years for aggravated robbery, with the sentences running consecutively.

¶ 8    Greggs later filed a timely Crim. P. 35(c) motion for postconviction relief. He argued that he was denied effective assistance of counsel at his sentencing hearing and asked that the court appoint him counsel for the postconviction proceedings, "schedule an evidentiary hearing on all claims, and grant [him] postconviction relief." Greggs later moved for a proportionality review during the postconviction proceedings.

¶ 9    The court appointed counsel for Greggs. After the evidentiary hearing, the court determined that Gregg's sentence was not grossly disproportionate. However, concluding that Greggs had received ineffective assistance of counsel, the court granted Gregg's petition in part and vacated his sentence.

¶ 10    The prosecution appealed the court's decision, and a division of this court affirmed. *People v. Greggs*, (Colo. App. No. 21CA1255, Aug. 3, 2023) (not published pursuant to C.A.R. 35(e)). On remand, the court resentenced Greggs to a total of sixty-four years:

forty-eight years for the second degree murder and a consecutive sixteen years for the aggravated robbery.

¶ 11     Greggs now appeals this new sentence.

## II.     Analysis

¶ 12     Greggs, who is Black, contends that the court did not provide an adequate record to justify the sentencing disparity between him and his white codefendant, Baker.  The People, however, argue we should not reach this contention on the merits because the plea proviso in section 18-1-409(1), C.R.S. 2025, bars review of his sentence.  Greggs counters that the plea proviso does not preclude appellate review because he did not agree to a sentencing range.  He also argues that the plea proviso does not apply under *Sullivan v. People*, 2020 CO 58, ¶ 26, because he is appealing the manner in which his sentence was imposed, not just the propriety of his sentence.  We agree with the People.

### A.     Applicable Law and Standard of Review

¶ 13     A person convicted of a felony, "other than a class 1 felony in which a death sentence is automatically reviewed," has the right to appeal their sentence.  § 18-1-409(1).  A sentencing appeal can challenge: (1) the propriety of the sentence, which includes "the

nature of the offense, the character of the offender, and the public interest"; and (2) "the manner in which the sentence was imposed," which includes the "sufficiency and accuracy of the information on which [the sentence] was based." *Id.*

¶ 14     However, "if the sentence is within a range agreed upon by the parties pursuant to a plea agreement, the defendant shall not have the right of appellate review of the propriety of the sentence." *Id.* This exception is commonly known as the "plea proviso." *Sullivan*, ¶ 1. Whether this exception applies, and therefore bars appellate review, "is a question of statutory construction. Questions of statutory construction are legal questions subject to de novo review." *Id.* at ¶ 10.

¶ 15     When a district court imposes a sentence, it must "state on [the] record the basic reasons for imposing the sentence." *People v. Hoover*, 165 P.3d 784, 802 (Colo. App. 2006) (alteration in original) (quoting *People v. Watkins*, 613 P.2d 633, 637 (Colo. 1980)). While the court "must consider the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law, the deterrence of crime, and the protection of the public," the court's statement need not be lengthy. *People v.*

*Alley*, 232 P.3d 272, 276 (Colo. App. 2010). It should, however, "include the primary factual considerations bearing on the judge's sentencing decision." *Id.* (quoting *Watkins*, 613 P.2d at 637). Because the sentencing court's familiarity with a case makes it better suited to impose a sentence, on appeal the "court's sentencing decision will not be disturbed absent a clear abuse of discretion." *People v. Leske*, 957 P.2d 1030, 1042 (Colo. 1998).

## B.   Section 18-1-409(1)

### 1.   Greggs Waived His Right to an Appeal

¶ 16    The People argue that we should not reach the merits of Greggs's appeal because it is barred by the plea proviso. They claim that the plea proviso applies because Greggs signed a plea agreement containing an agreed-upon sentencing range. Greggs argues, however, that his appeal is not barred by the plea proviso because the plea agreement reflected "open sentences in the aggravated sentencing range," and the court was to determine the length, terms, and conditions. And because he agreed to these "open sentences," he asserts that the parties did not agree to a sentencing range.

¶ 17    The plea agreement reads as follows:

THE UNDERSIGNED PARTIES hereby agree and stipulate to the following:

1. That the People will file an Amended Count 1 – MURDER IN THE SECOND DEGREE, a Class 2 Felony.

- The penalty range for Amended Count 1, a Class 2 felony, is incarceration from eight to twenty-four years in the presumptive range, or up to forty-eight years if aggravated circumstances exist . . . .

2. That the defendant shall enter a *plea of guilty* to Amended Count 1 and a *plea of guilty* to Count 3 – AGGRAVATED ROBBERY, a Class 3 Felony.

- The penalty range for Count 3, a Class 3 felony, which is an extraordinary risk crime, is incarceration from four to sixteen years in the presumptive range, or up to thirty-two years if aggravated circumstances exist . . . .

3. That *sentencing* on the defendant's plea of guilty to Amended Count 1 and Count 3 shall be left open to the discretion of the Court with the following terms and conditions:

a. That the defendant stipulates that he is the proximate cause of all financial loss . . . [and] agrees to pay restitution . . . .

b. That the defendant, for consideration of this plea bargain, waives all rights under Rule 35(b) . . . .

c. That the defendant shall remain law abiding.

4. That the defendant understands that both Amended Count 1 and Count 3 require crime of violence sentencing . . . . Therefore, sentencing must be to the Department of Corrections for a term of at least the midpoint in the presumptive range up to twice the maximum term authorized in the presumptive range plus any term of mandatory parole.

5. That the defendant understands that his sentence will be to the Department of Corrections and that the range of the sentence is sixteen (16) to eighty (80) years.

6. That the defendant has made this plea knowingly and voluntarily and further acknowledges by said plea of guilty that all rights of appeal are waived.

   . . . .

8. That the People will file a Motion to Dismiss Count 2 – MURDER IN THE FIRST DEGREE, a Class 1 Felony, Count 4 – CRIMINAL ATTEMPT TO COMMIT SECOND DEGREE BURGLARY, a Class 4 Felony, Count 5 – TAMPERING WITH PHYSICAL EVIDENCE, a Class 6 Felony, and Count 6 – ABUSE OF A CORPSE, a Class 2 Misdemeanor.

¶ 18    It is true that the plea agreement initially states that "sentencing . . . shall be left open to the discretion of the Court" in paragraph three. But we cannot read this sentence in isolation. *See People v. Johnson*, 999 P.2d 825, 829 (Colo. 2000) ("Courts

9

have long applied contract principles when interpreting . . . plea agreements."); *see also Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009) (noting courts should interpret contracts as a whole). Indeed, the structure and plain language of the agreement indicates that the parties agreed to a sentencing range.

¶ 19    Paragraphs one and two of the plea agreement outline the counts Greggs pleaded guilty to, the felony classes of those counts, and the general sentencing ranges for each count. Then paragraph three states that the sentencing "shall be left open to the discretion of the [c]ourt" with certain specified terms and conditions. Paragraph four then clarifies that because the counts are crimes of violence, the sentencing term must be "of at least the midpoint in the presumptive range" and up to twice the maximum term. Paragraph five specifically states that "the defendant understands that his sentence will be to the Department of Corrections and that the range of the sentence is sixteen (16) to eighty (80) years."[3]

---

[3] We also note that in paragraph six of the plea agreement Greggs agreed that he "has made this plea knowingly and voluntarily and further acknowledges by said plea of guilty that all rights of appeal are waived."

Lastly, paragraph eight provides that the People will dismiss four other counts in exchange for Greggs's guilty plea, thus reducing his sentencing exposure.

¶ 20 Based on all of this, we conclude that the parties agreed to a sentencing range in the plea agreement. Therefore, Greggs cannot challenge the propriety of his sentence. *See* § 18-1-409(1).

### 2. The Court Did Not Abuse Its Discretion When It Sentenced Greggs to Sixty-Four Years

¶ 21 Greggs next argues that — in spite of the plea proviso — he can appeal his sentence because he is "challenging . . . the basis on which his sentence was imposed." He cites *Sullivan* in support of this argument, which held that "the plea proviso does not preclude an appeal related to the manner in which the sentence was imposed." *Sullivan*, ¶ 26. Greggs claims that he is permitted to appeal the manner in which his sentence was imposed on three grounds: (1) the sentencing court failed to provide a sufficient record or explanation as to why Greggs received a longer sentence than his codefendant, Baker; (2) "implicit or explicit racial bias" played a role "in imposing his sentence"; and (3) the court "failed to meaningfully engage with [the] mitigating evidence presented."

¶ 22     In *Sullivan*, the trial court "misstated the statutory sentencing range" during the defendant's sentencing hearing. *Id.* at ¶ 6. It said that the statutory range for first degree aggravated motor vehicle theft was three to twelve years, but the correct sentencing range was two to six years. *Id.* Sullivan appealed this sentence, claiming that the court's misstatement affected its sentencing decision. *Id.* at ¶ 7. A division of this court affirmed. *Id.* at ¶ 8. The division held that the propriety of a sentence "includes within its ambit" the manner in which the sentence was imposed, and therefore Sullivan's appeal was barred under section 18-1-409(1) because he had signed a plea agreement. *Sullivan*, ¶ 8.

¶ 23     The Colorado Supreme Court disagreed and reversed. The court held that when the legislature used the phrase "'propriety of the sentence' in the plea proviso," it did not intend to prohibit appeals challenging the propriety of the sentencing *proceeding*, or, in other words, the manner in which the sentence was imposed. *Id.* at ¶ 17. Accordingly, the plea proviso does not bar an appeal when the appeal "relate[s] to the manner in which the sentence was imposed." *Id.* at ¶ 26. The manner in which a sentence was imposed includes "'extrinsic factors and procedures which affect the

12

determination of the sentence,' including, 'the sufficiency and accuracy of the information on which the sentence was based.'" *Id.* at ¶ 13 (quoting *People v. Malacara,* 606 P.2d 1300, 1303 (Colo. 1980)).

¶ 24    Even if we assume without deciding that his three challenges go to the manner of the sentencing proceeding, Greggs cannot prevail on his claim.  First, Greggs argues that the court failed to provide a sufficient explanation as to why he received a longer sentence than Baker.  But neither *Sullivan* nor section 18-1-409(1) suggests that if codefendants receive dissimilar sentences, the court must provide an additional record to explain these differences.  The plain language of section 18-1-409(1) focuses on the particular sentence being imposed.  Further, "because sentencing is individualized, there is no requirement that codefendants receive similar sentences."  *People v. Valencia-Alvarez,* 101 P.3d 1112, 1117 (Colo. App. 2004).

¶ 25    Regardless, the court sufficiently explained the reasons that it gave Greggs a longer sentence than his codefendants.  The court explained that it sentenced Greggs to sixty-four years because

- Greggs and his friends traveled to Colorado "armed with several weapons," including the murder weapon;

- Greggs shot Smeltz five times, returned to the Jeep to reload his gun, and fired two additional shots "in an execution-style murder";

- Greggs recorded a video thereafter showing no remorse for the shooting;

- Greggs did not take responsibility for shooting Smeltz initially and claimed that Gresham was the shooter;

- Greggs was "intimately involved in a subsequent attempted robbery of the Smeltz home and . . . discard[ed] Smeltz's body in a field"; and

- Greggs was the "ringleader" behind the events that occurred given that he arranged the drug deal with Smeltz.

¶ 26     Based on the court's explanation, we understand the basis of its decision. Greggs played a major role in a "horrific crime" that resulted in Smeltz's death. He showed little remorse after the shooting, initially failed to take responsibility for his actions, and lied to law enforcement about who shot Smeltz. Given that the court's findings are sufficient for us to understand why it gave

14

Greggs a longer sentence, we reject the claim that the sentencing proceeding was flawed on this basis.

¶ 27    Next, Greggs asserts that he "is questioning . . . the role that implicit or explicit bias played in imposing his sentence." He asserts that "it is essential that a sentence imposed is free from impermissible considerations, such as race."

¶ 28    While we agree with this premise, and that systemic racism can affect sentencing decisions for people of color, Greggs points us to nothing in the record supporting his suggestion that the resentencing proceeding was plagued by explicit racial bias from any of the participants. And his implicit bias claim is based only on the assertion that "[i]mplicit bias can play a role at every stage of the criminal process." (Citing Bernice Donald, Jeffrey Rachlinski & Andrew Wistrich, *Getting Explicit About Implicit Bias*, 104 Judicature, no. 3, 2020, at 75, 77.) While undoubtedly correct, the only thing he points to in support of his argument is that he received a longer sentence than his white codefendant. But as we explain above, the court detailed why it found Greggs's behavior more culpable than Baker's. And while it's true that there are facts in the court's analysis that cut both ways, there are also facts that

15

support its conclusion that Greggs's behavior was more culpable. Given the court's reasoning — and without any other support in the record — we see no basis for Gregg's claim that the outcome of his resentencing proceeding was affected by implicit racial bias. *See Mitchell v. People*, 2026 CO 8, ¶ 47.

¶ 29 Finally, Greggs argues that the court failed to engage with his mitigation evidence. But the record doesn't support that claim. Before resentencing Greggs, the court acknowledged the mitigation evidence in this case. It noted that Greggs "suffered an indescribable childhood" with very little parental support and "a history of emotional, physical, and alleged sexual abuse." The court noted that Greggs's mother was also "in and out of jail" and that she exposed Greggs to drugs and violence. We therefore cannot say that the court did not engage with the mitigation evidence, even if it did not weigh such evidence as favorably as Greggs would have liked.

¶ 30 Given all of this, we see no record evidence of error in the resentencing proceeding.

## III. Disposition

¶ 31     The sentence is affirmed.

JUDGE FOX and JUDGE SULLIVAN concur.