The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Kenneth Thomas GARCIA,
Defendant–Appellee.

No. 99SA428.

Supreme Court of Colorado,
En Banc.

Oct. 23, 2000.

Jeanne M. Smith, District Attorney, Fourth Judicial District, Ann Joyce, Deputy District Attorney, Gordon R. Denison, Deputy District Attorney, Colorado Springs, Colorado, Attorneys for Plaintiff–Appellant.

Alternative Defense Counsel, Kathleen A. Carlson, Denver, Colorado, Attorney for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

In this interlocutory appeal, we review the trial court's conclusion of law that detention of the defendant in the locked back compartment of a police car for fifteen minutes constituted an illegal arrest and, in the alternative, that failure to deliver a *Miranda* advisory prior to the obtaining defendant's consent to search his residence vitiated the defendant's consent to search.[1]

We hold that (1) defendant's fifteen-minute detention in the police car occurred for officer safety purposes in the course of an investigatory stop, as officers investigated four individuals about a nighttime domestic disturbance involving drugs, and under the circumstances did not constitute an arrest; and (2) the absence of a *Miranda* warning prior to requesting a consensual search did not

invalidate the defendant's voluntary consent to search.

## I.

On June 29, 1999, at about 10:00 p.m., three Colorado Springs police officers responded to a disturbance at a mobile home park in the 3600 block of North Cascade. A neighbor had reported that men and women were "yelling and screaming" at that address. When they arrived at the scene, officers found a man heavily intoxicated, yelling and knocking on the door of the residence where the disturbance was reported. They placed the intoxicated man in one of the police cars. The officers then knocked on the residence door of the defendant, Kenneth Garcia (Garcia), to inquire about the reported disturbance. Garcia stepped approximately ten feet outside the residence to speak with the officers and left the door open behind him. The officers questioned Garcia. He denied there was any disturbance.

As the officers spoke with Garcia, they saw a small pipe on the ground next to him of a type used for smoking methamphetamine or crack cocaine. They also noticed a picture of a marijuana plant on the wall inside the residence.

The officers placed Garcia in the back seat of a different police car from where the intoxicated man was sitting. Officers testified at the suppression hearing that they had placed the intoxicated individual and Garcia in two separate police cars because they "didn't know what was happening inside, if there are or were other individuals that were yelling—officer safety purposes." Officer testimony about Garcia's detention also included the following:

Q. And is there any reason that you could tell the Court why you decided to put him in the car versus having him stand outside?

A. Officer safety issues, that's the only reason he was in the patrol car.

1. The issues on this appeal taken pursuant to section 16–12–102(2), 6 C.R.S. (2000) and C.A.R. 4.1 are "whether the district court erred in suppressing items seized during the execution of a valid consent to search of the defendant's residence by erroneously concluding that the defendant was in custody just because he was seated in a police car while the police investigation occurred and that his consent was invalid because a *Miranda* warning was not given."

The officers did not handcuff Garcia when they placed him in the police car, but he could not open the car doors from the inside. A cage separated Garcia from an officer who was sitting in the front seat of the police car. This officer told Garcia that he would be held in the police car during the investigation, and he asked Garcia whether there was anyone in the residence. Garcia replied that two women were inside.

While Garcia sat in the police car, the two women exited the residence. One of the women told the officers that Garcia offered her a "blast" from his crack pipe. Based on the pipe, the picture of the marijuana plant inside Garcia's residence, and the statement that Garcia had offered the woman crack to smoke, the officers decided to ask Garcia for consent to search his residence.

The officer who was sitting in the front of the police car with Garcia filled out the top portion of a search waiver form and handed it to him. Garcia read the search waiver aloud to the officer, then signed the bottom portion. The officers searched Garcia's residence and found several items of drug paraphernalia and crack cocaine. They then told Garcia that he was under arrest.

The prosecution charged Garcia with one count of possession of a schedule II controlled substance [2] and one count of possession of drug paraphernalia.[3] Garcia filed a motion to suppress evidence based on an illegal arrest. The trial court held two hearings and issued orders concluding that there were two grounds for suppressing evidence in the case: (1) an illegal arrest by virtue of placing and keeping Garcia in the police car without probable cause and (2) failure to deliver Garcia a Miranda[4] warning prior to obtaining his consent to search his residence.

In regard to Garcia's detention in the police car, the trial court's written suppression order recites, in pertinent part:

In this case the Court must first determine the nature of the contact between the officers and the Defendant. The Court finds that the initial contact with the Defendant

at the front step of his residence was an investigatory stop and the officers were therefore justified in their initial actions. However, when the officer took the Defendant into his custody and placed him in the back of a police car, that stop blossomed into an arrest.

In regard to Garcia's consent to search his residence, the written order states, in part:

While the Court finds from the evidence that the consent was voluntary, the Court finds the consent was not sufficiently the act of the Defendant's free will to purge the illegality. The arrest and the consent were close in time (approximately fifteen minutes apart); and there were no intervening circumstances between the arrest and consent (such as allowing the Defendant out of the police car or permitting him to talk to anyone else). While the Court does not find the police conduct particularly flagrant, that factor is only one factor to consider and is not determinative. Therefore, the Court finds that the Defendant's consent was not sufficiently an act of his free will to purge the primary taint of the illegal arrest.

In the alternative, the trial court concluded in one of its transcribed oral rulings that failure to deliver a Miranda advisory prior to obtaining Garcia's consent to search his residence vitiated that consent:

Further, the Court will find that since he was not advised of his Miranda rights pursuant to the Reddersen case that any consent given while in custody following custodial arrest, would also be a separate and independent ground for suppression of the search. Therefore, the Motion to reconsider is denied.

## II.

We hold that (1) defendant's fifteen-minute detention in the police car occurred for officer safety purposes in the course of an investigatory stop, as officers investigated four individuals about a nighttime domestic disturbance involving drugs, and under the cir-

2. § 18–18–405, 6 C.R.S. (1999).

3. § 18–18–428, 6 C.R.S. (1999).

4. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

cumstances did not constitute an arrest; and (2) the absence of a *Miranda* warning prior to requesting a consensual search did not invalidate the defendant's voluntary consent to search.

## A. Investigatory Stop

The prosecution does not contend that the officers had probable cause to arrest Garcia at the time they placed him in the police car, or that his detention was a consensual encounter. Therefore, the prosecution's challenge to the trial court's suppression order hinges on whether or not Garcia was properly detained pursuant to an investigatory stop. The trial court concluded that the act of placing and keeping Garcia in the back of the patrol car at the scene while the officers conducted their investigation constituted an arrest. Consequently, it decided that Garcia's consent to search his residence was the product of an illegal arrest. We disagree. In considering Garcia's detention and the trial court's suppression order, we must first determine whether it was an investigatory stop or an illegal arrest, and then whether it was constitutionally permissible.

### 1. Standard of Review

The Fourth Amendment to the United States Constitution provides that the people shall be free from unreasonable searches and seizures. *See People v. Paynter*, 955 P.2d 68, 71 (Colo.1998). Investigatory stops and arrests are seizures that implicate the Fourth Amendment. *Id.* at 72. An investigatory stop is an "intermediate" level of police response or limited seizure, and it may be proper in "narrowly defined circumstances upon less than probable cause." *People v. Archuleta*, 980 P.2d 509, 512 (Colo. 1999). An arrest must be supported by probable cause. *Id.* "Whether an encounter is an arrest or an investigatory stop is a mixed question of law and fact." *People v. Smith*, 13 P.3d 300, 304 (Colo.2000).

When we consider the trial court's suppression order, we defer to its findings of fact, but review its conclusions of law de novo. *Id.* We review the totality of the circumstances in determining whether the intrusion was a proper investigatory stop or an illegal arrest that lacked probable cause. *See People v. D.F.*, 933 P.2d 9, 14 (Colo.1997) (holding that a proper investigatory stop occurred when police detained three juveniles on reasonable suspicion they might possess a firearm).

An investigatory stop implicates a limited seizure based on less than probable cause; "it must be brief in duration, limited in scope, and narrow in purpose." *People v. Tottenhoff*, 691 P.2d 340, 343 (Colo.1984). Officers must have an articulable and specific basis in fact to believe that an individual is committing, has committed, or is about to commit a crime. *See People v. Padgett*, 932 P.2d 810, 814 (Colo.1997). The trial court must take into account the totality of the circumstances known to the police officers at the time of the investigatory stop, combined with any rational inferences made therefrom. *See Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968); *People v. Sutherland*, 886 P.2d 681, 686 (Colo. 1994).

We recently considered officer safety and use of force as factors in determining the boundary between an investigatory stop and an arrest. In *Smith*, we recognized that an officer may take steps to ensure his or her own safety during the course of an investigatory stop and that using handcuffs, for example, does not automatically transform an investigatory stop into an arrest. *See Smith*, 13 P.3d at 305. We noted that " 'the trend developing since *Terry* has been to include within the rubric of investigatory stops in some circumstances ... the placing of suspects in police cruisers, ... and other measures traditionally associated with arrest than with investigatory detention.' " *Id.* at 305 (quoting *Archuleta*, 980 P.2d at 513). We stated that physical restraint is "only justified when the circumstances indicate that such force constitutes a 'reasonable precaution for the protection and safety of the investigating officers.' " *Id.* at 305 (quoting 4 Wayne R. LaFave, *Search and Seizure* § 9.2(d) at 37 (3d ed.1996)).

The touchstone of our analysis into the police intrusion on a defendant's privacy

are the three criteria for an investigatory stop: (1) that the officers had an articulable and specific basis in fact for suspecting (i.e., a reasonable suspicion) that criminal activity had taken place, is in progress, or is about to occur; (2) that the purpose of the intrusion was reasonable; and (3) that the scope and character of the intrusion was reasonably related to its purpose. *See People v. Canton,* 951 P.2d 907, 909 (Colo.1998). The salient question is whether the officers had an objectively reasonable basis for the stop "and whether the scope and duration of the detention is reasonable." *People v. Ramos,* 13 P.3d 295, 299 (Colo.2000). With regard to the third .prong of the investigatory stop criteria, we have utilized four non-exclusive factors in determining whether an investigatory stop is reasonably related in scope and character to its purpose. *See Ramos,* 13 P.3d at 299; *People v. Rodriguez,* 945 P.2d 1351, 1362 (Colo.1997). We proceed with analysis of this case utilizing the three prongs of the investigatory stop criteria and the four non-exclusive factors of *Rodriguez.* *See Rodriguez,* 945 P.2d at 1362. *See also Ramos,* 13 P.3d at 299.

### 2. Garcia's Detention

■ The record demonstrates that the officers were responding to a domestic disturbance report at night. They were told that men and women were yelling and screaming at a residence. At the outset of their investigation, the officers did not know how many people were involved or if they were armed. In the course of interviewing persons at the scene, they saw drug paraphernalia, a pipe at Garcia's feet, indicating possible drug possession and use. Based thereon, they had reasonable suspicion to pursue an investigation into the commission of criminal acts. They had a reasonable concern for their own safety, and detained, in separate cars while pursuing their investigation, two men who were apparently involved. When the officers placed Garcia in the police car, the officers had contacted only these two men and had not yet contacted the women mentioned by Garcia. The officers' subsequent contact with one of the women provid-

ed evidence of illegal drug possession and use. This led to the police requesting Garcia's consent to search his residence. The interchange between the officer and Garcia within the police car was straightforward and relatively brief. The court found that no flagrant police conduct occurred.

■ The trial court found that Garcia was detained in the police car and, therefore, was "in custody" during the ensuing fifteen minutes of the investigation prior to the police asking for consent to search his residence. The trial court stated in its written order that one of the officers "acknowledged that the contact with the defendant at that point was 'custodial' " and the officer's purpose "was to secure the defendant while completing his investigation." However, the test we apply is objective in nature, not dependent on the subjective impressions of the officers involved. "Objective standards of reasonableness guide our inquiry as to the propriety of an officer's decision to conduct an investigatory stop." *Ramos,* 13 P.3d at 297. Central to our inquiry is whether there was a reasonable nexus between the police intrusion and the investigation.

In regard to the first two prongs of the investigatory stop criteria, we conclude from the record that the officers had a reasonable suspicion that Garcia had committed a crime and that the purpose of his detention in the police car was reasonable. We now apply the *Rodriguez* factors in determining whether this investigatory stop was reasonably related in scope and character to its purpose.

■ First, the court should consider the length of the intrusion. *See Rodriguez,* 945 P.2d at 1362 (holding that an investigatory stop lasting ninety minutes and involving relocation many miles from the stop to the police station became an arrest); *see also United States v. Sharpe,* 470 U.S. 675, 685–86, 105 S.Ct. 1568, 1575–76, 84 L.Ed.2d 605, 615–16 (1985)(rejecting a bright-line rule defining a specific length of time at which a stop becomes an arrest, but conceding officers must be able to detain a suspect long enough to complete the investigation).

■ The length of a valid investigatory stop is properly measured as the time required for the officers to diligently complete the investigation given the complexity of the situation and their legitimate personal safety considerations. In *Smith*, 13 P.3d at 305, we held that "during an investigatory stop, an officer may take steps to ensure his own safety" but that a "show of force does heighten our concern as to whether the action taken exceeds what is reasonably necessary." Here, as events unfolded, there were four persons the police were investigating in regard to a domestic disturbance involving drugs. We conclude that fifteen minutes of investigation while Garcia was detained in the police car did not transform his detention into an arrest.

■ Second, the court should consider whether the officers diligently pursued the investigation during the detention. *Rodriguez*, 945 P.2d at 1362; *See also Sharpe*, 470 U.S. at 686, 105 S.Ct. at 1575 (stating that whether the police diligently pursued the investigation is important when evaluating whether the length of detention is too long). The record demonstrates that when the officers placed Garcia in the back of the police car, they proceeded with the investigation promptly, sought Garcia's consent to search his residence quickly upon interviewing the two women who emerged from the residence, and soon completed the search upon receiving Garcia's consent to search. We conclude that the officers diligently pursued the investigation.

■ Third, the court should consider whether the suspect was required to move from one location to another. *See Rodriguez*, 945 P.2d at 1362. We find the logic of *Rodriguez* and of a Ninth Circuit decision to be instructive. In *Rodriguez*, we determined that the forced return of the defendant from the point of contact to the police station many miles away did not constitute a brief and minimal intrusion and was unreasonable

under the circumstances. *See Rodriguez*, 945 P.2d at 1363. In *United States v. Baron*, 860 F.2d 911, 915 (9th Cir.1988), the court held that moving a suspect from the street into the back of a police car did not make a *Terry* stop a de facto arrest. The court held that

> the police may move a suspect without exceeding the bounds of the *Terry*-stop when it is necessary for safety or security reasons, when it is the least intrusive method available [5] to achieve the legitimate goals of the stop, and when moving the suspect does not make the circumstances of the detention so coercive that the detention becomes indistinguishable from an arrest.

*Id.*

In contrast to the facts in *Rodriguez*, the officers' movement of Garcia was reasonably related to the safety of the officers while they pursued an investigation in the immediate vicinity of the place where he was being detained. With a domestic disturbance at hand and evidence indicating drug use, the officers chose an appropriate way to maintain control at the scene, protect their persons, and interview all the suspects and witnesses. Garcia was in public view during the entire fifteen minutes he was detained in the back of the police car. Keeping a person publicly visible during an investigation allows other persons to observe whether police conduct is coercive. We conclude that the movement of Garcia from the front of his residence to the police car was reasonable.

■ Fourth, the court should consider whether the police acted unreasonably in failing to recognize or pursue a less intrusive means of detention. *See Rodriguez*, 945 P.2d at 1362 (citing *Sharpe*, 470 U.S. at 687, 105 S.Ct. at 1576). Our precedent does not require the police to choose the least intrusive means of detention. Rather, we must determine "whether the police acted unreasonably in a given case." *Rodriguez*, 945 P.2d at 1363. We conclude that the officers acted reasonably when they detained Garcia within the

5. The requirement that the least intrusive method available be used is not consistent with Supreme Court jurisprudence. In *United States v. Sharpe*, 470 U.S. 675, 687, 105 S.Ct. 1568, 1576, 84 L.Ed.2d 605, 616 (1985), the Court decided that a judge should not engage in abstract analysis of the means by which the police could have detained the suspect. Instead, a court should ask whether the police acted unreasonably in not considering alternatives. *See id.*

police car. They had few options available. When the officers arrived at the scene, they immediately confronted an obviously intoxicated person who was apparently involved in an altercation with someone in the residence. When Garcia emerged from his residence and the officers observed evidence of drug use, the pipe at Garcia's feet, they had reasonable suspicion that a crime was being committed; but, they did not know how many more persons might be involved. They could have allowed Garcia to re-enter the residence, but that might have compromised officer safety and contributed to the disturbance they were investigating. We conclude that the officers' detention of Garcia in the police car was not unreasonably intrusive under the circumstances.

In sum, we determine that the officers' placement of Garcia in the police car did not elevate the investigatory stop into an illegal arrest. The officers had a reasonable suspicion to believe that a crime was being committed, had a reasonable concern for their safety, took reasonable steps to detain Garcia while they pursued their investigation, and reasonably proceeded to complete the investigation. *See D.F.*, 933 P.2d at 12. The scope and character of police intrusion upon Garcia's privacy was reasonable in light of its purpose.

Police conduct under the circumstances of this case did not offend the reasonableness requirements of the Fourth Amendment. Consequently, the trial court erred in suppressing the evidence as the fruit of an illegal arrest. We now proceed to its alternative conclusion that failure to give a *Miranda* advisory vitiated Garcia's consent to search his residence.

### B. Failure to Read *Miranda* Rights Prior to Consent

Warrantless searches are per se unreasonable, unless they satisfy one of the specified exceptions. *See Rodriguez*, 945 P.2d at 1359. One such exception is the defendant's voluntary consent to search. *See People v. Licea*, 918 P.2d 1109, 1112 (Colo.1996). The trial court found that Garcia's consent was voluntary, but that it was the product of an illegal arrest. *Cf. People v. Lewis*, 975 P.2d 160, 173 (Colo.1999) (stating that the attenuation between an illegal arrest and collection of evidence may dissipate the taint, which would otherwise mandate suppression). We have determined that the evidence found within the residence was not the product of an illegal arrest. We also hold that the trial court erred in its alternative *Miranda* conclusion.

The record demonstrates that (1) Garcia cooperated with the officers; (2) the officers gave Garcia a consent to search form, which Garcia read aloud and signed; and (3) Garcia understood the nature of the document he signed. We have held that a *Miranda* warning is not required before the police may request that a suspect, even though in custody, consent to a search. *See People v. Reddersen*, 992 P.2d 1176, 1182 (Colo.2000); *Licea*, 918 P.2d at 1113; *People v. Helm*, 633 P.2d 1071, 1077 (Colo.1981). Although a consensual search may produce incriminating physical evidence, the consent itself is not self-incriminating in the *Miranda* sense. *See* 3 LaFave, *supra*, § 8.2(j) at 691 (stating that a "consent to search is not testimonial or communicative in the Fifth Amendment sense").

Consequently, the trial court erred in concluding that the officers should have read Garcia his *Miranda* rights prior to asking him for consent to search his residence.

### III.

Accordingly, we reverse the trial court's suppression order, and remand this case for further proceedings consistent with this opinion.