The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

Wyatt PACHECO, Defendant–Appellee.

No. 08SA56.

Supreme Court of Colorado,
En Banc.

May 19, 2008.

Bonnie S. Roesink, District Attorney, 14th Judicial District, Jeremy J. Snow, Deputy District Attorney, Craig, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Colorado State Public Defender, Emily Wickham, Deputy State Public Defender, Steamboat Springs, Colorado, Attorneys for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

The People brought this interlocutory appeal pursuant to C.A.R. 4.1 to challenge the trial court's order suppressing evidence found by police during an investigatory stop of defendant's automobile. The trial court granted the defendant's motion to suppress. It ruled that the initial traffic stop of defendant's vehicle was legal because the investigating officer had a reasonable suspicion of criminal activity. The trial court also ruled that the investigating officer exceeded the scope of the investigatory stop when he continued to detain the vehicle while briefly inspecting the exterior of a nearby building for possible evidence of burglary or vandalism. We reverse the suppression order. We hold that the continued detention of the defendant while the investigating officer examined the exterior of the nearby building did not exceed the scope of the investigatory stop. We remand this case to the trial court for further proceedings consistent with this opinion.

## I.

Defendant, Wyatt Pacheco, was charged with possession of more than one gram of a schedule II controlled substance, possession

of marijuana, and possession of drug paraphernalia. Before trial, he filed a motion arguing that the police illegally stopped his vehicle and subsequently detained and arrested him in violation of his Fourth Amendment rights. Pacheco sought to have all evidence gathered as a result of that stop suppressed. The trial court conducted a hearing and suppressed the evidence.

On the evening of October 16, 2007, Officer Mike Edwards of the Craig Police Department observed a gray Subaru Legacy on four separate occasions. Officer Edwards took a special interest in the automobile because he had recently sold a similar vehicle. At approximately 1:00 a.m., Officer Edwards saw the vehicle parked near the back of a building occupied by Bob Johnson State Farm Insurance. Officer Edwards considered this to be an unusual location for the vehicle to park and he suspected that the vehicle might be involved in a burglary or vandalism. As grounds for his suspicion, Officer Edwards testified:

> The vehicle was concealed behind the business in an area where vehicles do not normally park. There is a door to the business located on the west side of the building directly where the vehicle was parked. It was not very well lit in that area. It was approximately 1:00 in the morning, the business was closed. There were no lights on in the business. And the vehicle appeared to have been shut off. . . .

He also testified that he had been a police officer for about five years and had investigated approximately thirty burglaries and one hundred cases of vandalism.

Officer Edwards decided to approach the vehicle. As he turned his patrol car around, the vehicle began to drive off. He stopped the vehicle as it was about to leave the parking lot and asked Pacheco and a passenger for identification, which they provided. Shortly thereafter, police dispatch informed Officer Edwards that neither Pacheco nor the passenger had any outstanding arrest warrants. Officer Edwards asked the men why they were parked behind the building. The men responded that they were playing car tag. Officer Edwards did not believe this explanation because it was inconsistent with

his earlier observations—most significantly that there was no other traffic in the area and that the car was obeying all traffic laws.

Approximately three minutes into the stop, another patrol car arrived. Officer Edwards asked the arriving officer, Corey Wagner, to wait with the stopped vehicle and its occupants while he walked over and inspected the exterior of the building where the vehicle had been parked. Officer Edwards did not find any evidence of illegal activity at the building and returned to the vehicle, intending to release it. Up to this point, the vehicle and its occupants had been detained for approximately seven minutes.

When Officer Edwards returned to the vehicle, Officer Wagner informed him that he had smelled marijuana coming from the vehicle. At that point, the officers asked the men to exit the vehicle and patted them down. Approximately twelve minutes later, Officer Luker arrived with a drug-sniffing dog. After the dog alerted the officers to the presence of drugs in the vehicle, the officers searched the vehicle and found marijuana and drug paraphernalia.

Pacheco filed a suppression motion seeking to suppress all evidence gathered during the stop of his automobile on the grounds that the evidence was the fruit of an illegal search. The trial court held a hearing and ruled that Officer Edwards's decision to stop the vehicle was legal because he had a reasonable suspicion of criminal activity. But the trial court went on to rule that Officer Edwards exceeded the lawful scope of the stop when he continued to detain the vehicle while he inspected the exterior of the building.

The trial court reasoned that, immediately prior to inspecting the building, the occupants of the vehicle had identified themselves and provided an explanation for their behavior. Furthermore, Officer Edwards had not found any evidence of illegal activity at the vehicle. Thus, the trial court concluded that Officer Edwards was obligated to release the vehicle at that point. Instead, he continued to detain the vehicle based on what the trial court characterized as "essentially, a hunch." Concluding that the continued detention of

the vehicle and its occupants went beyond the proper scope of the stop, the trial court granted Pacheco's motion to suppress. The prosecution then filed this interlocutory appeal.

## II.

We hold that Pacheco's continued detention while Officer Edwards examined the exterior of the nearby building did not exceed the scope of the investigatory stop.

### A.

#### Standard of Review

■ The proper scope of an investigatory stop is a mixed question of fact and law. *See People v. Garcia*, 11 P.3d 449, 453 (Colo. 2000). When reviewing a trial court's suppression order, we defer to its factual findings, but we review its conclusions of law de novo. *Id.* Ultimately, we examine the "interrelationship between the evidentiary facts of record, the findings of the trial court, and the applicable legal standards in review of the lower court's conclusion of law." *People v. D.F.*, 933 P.2d 9, 13 (Colo.1997).

### B.

#### Investigatory Stops

■ A police officer with a reasonable suspicion that a suspect is engaging in criminal activity may detain that person in order to conduct a brief investigation. *People v. Ingram*, 984 P.2d 597, 603 (Colo.1999) (citing *Terry v. Ohio*, 392 U.S. 1, 30–31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). An investigatory stop is an intermediate form of police response short of custodial arrest. *See People v. Archuleta*, 980 P.2d 509, 512 (Colo. 1999). An investigatory stop must be "brief in duration, limited in scope, and narrow in purpose." *Garcia*, 11 P.3d at 453.

■ A police officer may conduct an investigatory stop of a vehicle when the officer has: (1) a reasonable suspicion that criminal activity has occurred, is taking place, or is about to take place; (2) a reasonable objective for the intrusion; and (3) a reasonable connection between the scope and character of the intrusion and its objective. *Outlaw v. People*, 17 P.3d 150, 156 (Colo.2001).

■ The trial court, as we do on review, must consider the totality of the circumstances in assessing whether the specific facts known to the investigating officer, as well as rational inferences that can be drawn from those facts, create a reasonable suspicion of criminal activity. *Ingram*, 984 P.2d at 603; *see also United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (stating that in reviewing the totality of the circumstances, a reviewing court should consider the investigating officer's experience and specialized training and the reasonable inferences and deductions that the officer may draw based on that background).

■ With regard to whether the scope and character of the investigative stop is reasonable in light of its objective, the nature of the suspected crime defines the proper scope and character of the stop. *See People v. Haley*, 41 P.3d 666, 673 (Colo.2001) ("The intrusion [associated with an investigative stop] is limited to the reason for the stop unless other circumstances or acts permit the intrusion to continue."); *People v. Altman*, 938 P.2d 142, 147 (Colo.1997) (holding that the purpose of an investigatory stop had not dissipated after the investigating officer determined that the suspect's driver's license and registration were valid, because the officer initiated the stop in order to investigate a cracked windshield and an obscured license plate).

■ Trial courts should consider four nonexclusive factors to assist in determining the reasonable scope and character of the stop: (1) the length of time the suspect was detained; (2) whether the officer diligently pursued the investigation; (3) whether the suspect was moved from one place to another; and (4) whether there were alternative, less intrusive means by which the officer could have conducted the investigation. *People v. Ramos*, 13 P.3d 295, 299 (Colo.2000).

### C.

#### Application to this Case

■ With respect to whether Officer Edwards had reasonable suspicion of criminal

activity prior to initiating the stop, the trial court determined that "[t]he late night, the darkness, the furtiveness of the vehicle, the unusual location all provided an articulable basis to suspect criminal activity."

We agree. Our review of the evidence indicates that Officer Edwards reasonably suspected that the occupants of the vehicle may have been casing the building for a burglary or may have engaged in vandalism of the building. At the time he stopped Pacheco's vehicle, Officer Edwards knew the following facts: the vehicle was parked behind the building in an area where vehicles do not normally park, there was a door to the business adjacent to the vehicle's location, the area was not well lit, it was approximately 1:00 in the morning, the business was closed, there were no lights on in the building, and the vehicle appeared to have been turned off. These specific facts provided Officer Edwards with a reasonable suspicion that the vehicle's occupants may have been engaged in a burglary or vandalism. Accordingly, we conclude that Officer Edwards had a reasonable suspicion of criminal activity. We also conclude that Officer Edwards's objective for the stop—questioning the vehicle's occupants and seeing if there was physical evidence of a burglary or vandalism in the vicinity—was reasonable.

■■■ Finally, we must consider whether the scope and character of the investigatory stop were reasonable in light of its objective. Pacheco argues the scope of an investigatory stop is strictly limited to determining an individual's identity or obtaining an explanation for his behavior. Once the investigating officer has ascertained this information, he or she must release the suspect unless the suspect consents to continued detention or the officer has probable cause to justify an arrest. Pacheco's characterization of our prior case law on this issue is incorrect. We have never instituted such a rigid limitation on the scope of an investigatory stop; our cases demonstrate that the character and scope of an investigatory stop must be assessed based on the purpose of the stop. *See, e.g., Haley,* 41 P.3d at 673; *Altman,* 938 P.2d at 142. So long as the stop is brief in duration and the scope and character of the stop are reasonably related to its purpose, the investigation is constitutional.

■■■ In considering whether the scope and character of the investigatory stop were reasonable, we have utilized four non-exclusive factors. *See Ramos,* 13 P.3d at 299. The first factor that should be considered is the length of the intrusion. "The length of a valid investigatory stop is properly measured as the time required for the officers to diligently complete the investigation given the complexity of the situation and their legitimate personal safety considerations." *Garcia,* 11 P.3d at 455; *see also United States v. Sharpe,* 470 U.S. 675, 685–86, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) ("Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop. But our cases impose no rigid time limitation on [investigative] stops.").

In this case, Officer Edwards was investigating whether the occupants of the vehicle were involved in a burglary or vandalism while parked at the rear of the building. It took Officer Edwards approximately four minutes to question the occupants of the vehicle, and then an additional two or three minutes to walk over, briefly inspect the exterior of the building and the surrounding area, and return to Pacheco's vehicle. All together, the officers detained defendant for approximately seven minutes during the initial questioning and subsequent search of the building's exterior. We conclude that this was a reasonable amount of time to detain the vehicle and its occupants for the purpose of investigating a suspected burglary or vandalism.

Next, the court must consider whether the investigating officer diligently pursued the investigation during the detention. *People v. Rodriguez,* 945 P.2d 1351, 1362–63 (Colo.1997) (holding that an investigating officer did not diligently pursue an investigation into the location of a hidden vehicle identification number when the detention took ninety minutes and the officer required the vehicle's occupants to drive ten miles out of their way to continue the search). As noted above, the officers detained Pacheco

for approximately seven minutes during the initial questioning and the inspection of the building. There is no evidence that Officer Edwards unreasonably prolonged his questioning or the inspection of the building. Accordingly, we conclude that Officer Edwards diligently pursued his investigation in this case.

The next factor is whether the suspect was moved from one place to another. *Id.* at 1362. In this case, Pacheco remained at the same physical location throughout the entire investigative stop. Thus, this factor also indicates that the investigative stop was not excessive in scope.

██ Finally, the court should consider whether the police acted unreasonably in failing to pursue a less intrusive means of detention. *Garcia,* 11 P.3d at 455; *Rodriguez,* 945 P.2d at 1362. The determinative consideration with respect to this factor is not whether the police chose the least intrusive means of detention, but "whether the police acted unreasonably in a given case." *Rodriguez,* 945 P.2d at 1363.

In this case, the trial court held that it was unreasonable for the officers to continue to detain Pacheco while Officer Edwards inspected the building. Up to that point, Officer Edwards had found no evidence that the defendant was involved in criminal activity. The trial court ruled that absent such evidence, the officers were required to allow the men to leave. The court reasoned that if Officer Edwards subsequently discovered evidence of criminal activity while inspecting the building, "he could easily apprehend them again." We disagree with the trial court's reasoning.

We conclude that Officer Edwards acted reasonably when he briefly inspected the exterior of the building and the surrounding area. The officers detained the vehicle for only an additional few minutes during the building inspection. Moreover, it was likely that this inspection would enable Officer Edwards to quickly assess whether his initial suspicion that Pacheco and the passenger were engaged in a burglary or vandalism was correct. In fact, that is precisely what happened; Officer Edwards did not find any evidence of burglary or vandalism while in-

specting the building and returned to the car intending to release Pacheco and the passenger. Under the circumstances, the officers' decision to detain Pacheco during the search was not unreasonably intrusive.

Of course, Officer Edwards testified that when he returned to the vehicle, Officer Wagner informed him that he had detected the odor of marijuana coming from the vehicle while Officer Edwards had been away. This was evidence of criminal activity that provided a basis for the investigatory stop to continue because the officers now had reasonable suspicion of illegal drug use. *See Mendez v. People,* 986 P.2d 275, 281 (Colo. 1999) (holding that probable cause exists when a trained officer detects the odor of marijuana emanating from a particular place); *see also United States v. Morin,* 949 F.2d 297, 300 (10th Cir.1991) (holding that "the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle").

The trial court erred in ruling that the investigatory stop was illegal from the moment Officer Edwards left the vehicle to inspect the exterior of the building.

### III.

Accordingly, we reverse the trial court's suppression order and remand this case to the trial court for further proceedings consistent with this opinion.