23CA2033 Peo v McGee 04-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2033
Mesa County District Court No. 22CR271
Honorable Matthew D. Barrett, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Bobbie Sue McGee,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE SULLIVAN
Fox and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 2, 2026

---

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kelly A. Corcoran, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Bobbie Sue McGee, appeals the judgment of conviction entered on a jury verdict finding her guilty of possession with intent to distribute a controlled substance, following too closely, and a special offender count for possession with intent to distribute. We affirm in part, vacate in part, and remand the case with directions.

## I.    Background

¶ 2    In February 2022, Trooper Jeff Vrbas, a member of the smuggling and trafficking interdiction section of the Colorado State Patrol, was sitting in his patrol car in the median of I-70 when he noticed McGee driving an SUV with out-of-state plates. According to Vrbas, McGee yawned as she drove past him. Vrbas perceived her yawn as exaggerated or fake.

¶ 3    After Vrbas began following McGee, he observed her driving in the left lane for several miles without passing any other vehicles before merging back into the right lane. Vrbas later observed McGee come within a one-second following distance behind a semi-truck before she changed lanes to pass. Vrbas then initiated a traffic stop.

1

¶ 4     When Vrbas approached McGee's passenger-side window, he smelled "raw marijuana" and the "overwhelming odor of air fresheners."  He also noticed several air fresheners hanging throughout the SUV.  After asking for McGee's license, Vrbas learned that the SUV was a rental.  Vrbas directed McGee to exit the SUV and wait by the passenger-side window of his patrol car while he checked her information and gave her a warning.  McGee's passenger, Amber Jackson, remained in the SUV's passenger seat.

¶ 5     While McGee waited next to the patrol car, Vrbas asked her several questions about her trip, which McGee answered.  McGee relayed that she was the president of several motorcycle clubs and that she and Jackson were driving from New York to California and back to visit a few of the chapters.  She said that they chose to rent the SUV instead of flying because it was cheaper, that they rented a large vehicle because she "like[s] big cars," that they were in California for about a week, and that they spent a lot of time shopping on their trip.  She also explained that her passenger, Jackson, was "new in [her] club" and had "just joined."

¶ 6     After McGee relayed this information, Vrbas walked back to the SUV and asked Jackson similar questions.  Jackson repeated a

similar narrative but told Vrbas that she had "just joined" the motorcycle club "about a year ago."

¶ 7 Once Vrbas finished giving McGee a verbal warning and returned her documents, he asked if he could "ask [her] a couple questions." He first asked whether she or Jackson had a large amount of cash, weapons, guns, or "anything else in there." McGee said no, except for gas money and a taser. Vrbas then asked if he could search her SUV. McGee agreed.

¶ 8 During the search, Vrbas found seven bricks of cocaine in the spare tire under the SUV. The prosecution charged McGee with possession with intent to distribute a controlled substance, § 18-18-405(1), (2)(a)(1)(A), C.R.S. 2025, following too closely, § 42-4-1008(1), C.R.S. 2025, and a special offender sentence enhancement, § 18-18-407(1)(c), C.R.S. 2025.

¶ 9 Before the trial, McGee moved to suppress the drug evidence, arguing that Vrbas lacked reasonable suspicion to initiate the traffic stop, that he unlawfully prolonged the stop, and that her consent to search was involuntary. After holding an evidentiary hearing, the district court denied McGee's motion in a detailed oral ruling.

3

¶ 10    A jury convicted McGee as charged, and the district court sentenced her to concurrent terms of sixteen years in the custody of the Department of Corrections on the possession with intent to distribute count and the special offender sentence enhancement count.  The court closed out the following too closely charge with the payment of fees and costs.  McGee now appeals, challenging the district court's (1) denial of her motion to suppress; (2) admission of Vrbas's testimony regarding safe distances for following other vehicles; and (3) separate conviction and sentence on the special offender sentence enhancement.

## II.    Motion to Suppress

¶ 11    McGee contends that the district court erred by denying her motion to suppress because (1) Vrbas lacked reasonable suspicion to initiate the traffic stop; (2) the scope, character, and extent of the stop exceeded its traffic-related justifications; and (3) her consent to search was involuntary.

### A.    General Legal Principles and Standard of Review

¶ 12    The United States and Colorado Constitutions protect individuals from unreasonable searches and seizures.  U.S. Const. amend. IV; Colo. Const. art. II, § 7.  Absent an exception, a

4

warrantless search or seizure of a person is presumed unreasonable and therefore violates these constitutional protections. *People v. Johnson*, 2024 CO 47, ¶ 23; *People v. McKnight*, 2019 CO 36, ¶ 50.

¶ 13    Two exceptions to the warrant requirement are at issue here: investigatory stops and consensual searches. *See People v. Funez-Paiagua*, 2012 CO 37, ¶ 7 (citing *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968)); *People v. Syrie*, 101 P.3d 219, 222 (Colo. 2004).

¶ 14    "An investigatory stop is an encounter in which an officer briefly stops a suspicious person and makes reasonable inquiries to confirm or dispel these suspicions, such as determining an individual's identity or obtaining an explanation of a person's behavior." *Funez-Paiagua*, ¶ 7. A traffic stop typically falls into this category because it constitutes a limited, investigatory intrusion. *People v. Chavez-Barragan*, 2016 CO 66, ¶ 19 (*Chavez-Barragan II*) (citing *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). A law enforcement officer may employ such limited seizures so long as

> (1) there is a specific and articulable basis in fact for suspecting that criminal activity has taken place, is in progress, or is about to occur (that is, "reasonable suspicion"); (2) the purpose of the intrusion is reasonable; and (3) the scope and character of the intrusion are reasonably related to its purpose.

5

*People v. White*, 2023 CO 43, ¶ 32 (quoting *People v. Archuleta*, 980 P.2d 509, 512 (Colo. 1999)). McGee challenges only the first and third requirements.

¶ 15     We assess whether an officer had reasonable suspicion by asking whether the facts known to the officer, when taken together with rational inferences from those facts, gave rise to a reasonable and articulable suspicion of criminal activity justifying the intrusion into the defendant's personal privacy. *People v. Wheeler*, 2020 CO 65, ¶ 13. "This is an objective inquiry that requires us to consider the totality of the circumstances at the time of the intrusion." *People v. Gamboa-Jimenez*, 2022 COA 10, ¶ 40.

¶ 16     A consensual search by law enforcement is constitutionally permissible if the person's consent is voluntarily given. *Chavez-Barragan II*, ¶ 36. "Consent is voluntary if it is 'the product of an essentially free and unconstrained choice by its maker.'" *Id.* at ¶ 37 (quoting *People v. Munoz-Gutierrez*, 2015 CO 9, ¶ 16). By contrast, consent is involuntary if it results from "duress or coercion, express or implied, or any other form of undue influence exercised [by the police] against the defendant." *Id.* (alteration in original) (quoting *Munoz-Gutierrez*, ¶ 17).

¶ 17    A trial court's suppression order presents a mixed question of fact and law. *Chavez-Barragan II*, ¶ 18. We defer to the trial court's factual findings if they are supported by competent evidence in the record, but we assess the legal significance of those facts de novo. *Gamboa-Jimenez*, ¶ 35. When a stop is captured on an audio or video recording and no disputed facts outside the recording control the suppression issue, we sit in a similar position as the trial court and therefore may independently review the recording. *See People v. Furness*, 2025 CO 16, ¶ 3 n.1 (citing *People v. Kutlak*, 2016 CO 1, ¶ 13).

## B.    Reasonable Suspicion

¶ 18    McGee contends that Vrbas lacked reasonable suspicion to initiate the traffic stop. But Vrbas testified that he observed McGee driving in the left lane for several miles without passing another vehicle. The district court found his testimony credible. Absent exceptions not relevant here, Colorado law prohibits driving in a highway's passing lane unless the driver is passing other vehicles. § 42-4-1013(1), C.R.S. 2025. Based on the district court's findings, which McGee doesn't contest on appeal, we conclude that Vrbas had reasonable suspicion to initiate the traffic stop. *See People v.*

*Chavez-Barragan*, 2016 CO 16, ¶ 10 (*Chavez-Barragan I*) ("Suspicion of even a minor traffic offense can provide the basis for a stop.").

¶ 19 McGee nonetheless argues that the district court applied an incorrect standard by considering events that arose *after* Vrbas initiated the traffic stop — specifically, that she didn't contest Vrbas's assertion that she had committed traffic violations. But the court's ruling that reasonable suspicion supported Vrbas's decision to stop McGee didn't turn on her lack of dispute. Instead, the court found that reasonable suspicion existed "even putting [the lack of dispute] aside and even if [the court] were to not consider it at all." And regardless, Vrbas had reasonable suspicion to stop McGee based solely on her passing lane violation, which Vrbas observed before he initiated the stop.

¶ 20 McGee also argues that the court failed to resolve a conflict in its findings regarding her violation of the following too closely statute. § 42-4-1008(1). But again, McGee's passing lane violation alone provided reasonable suspicion for the stop. So we need not decide whether the court made conflicting findings regarding the following too closely violation.

## C. Scope, Character, and Extension of the Stop

¶ 21     McGee next contends that the scope and character of the stop unlawfully exceeded the intrusion required for Vrbas to complete his traffic-related objectives. She also asserts that Vrbas illegally extended the stop after returning her documents.

### 1. Additional Applicable Law

¶ 22     Once a law enforcement officer accomplishes the purpose of an investigatory stop and no further reasonable suspicion exists to support additional investigation, the officer generally may no longer detain the vehicle's driver or passengers. *Gamboa-Jimenez,* ¶ 38. During the stop, however, an officer may discover additional information giving rise to a new reasonable suspicion that may permit further investigation. *Chavez-Barragan II,* ¶ 21. If the underlying detention remains lawful, a "shift" in investigatory purpose isn't improper. *Id.* at ¶ 26.

¶ 23     When deciding whether an officer has unreasonably extended a lawful traffic stop, we must consider the facts and circumstances that gave rise to the initial stop plus any additional information the officer learned before issuing a warning or citation. *Gamboa-Jimenez,* ¶ 39. "[B]ecause an officer is entitled to draw

9

rational inferences from all the circumstantial evidence, we may not dismiss or discount acts simply because in isolation they may each have plausible innocent explanations." *Id.* at ¶ 40.

### 2. Analysis

¶ 24 In its oral ruling, the district court determined that Vrbas didn't violate McGee's constitutional rights because he credibly suspected her of drug trafficking. In support of this determination, the court made the following factual findings: (1) McGee drove a large, rented SUV from New York to California to visit motorcycle clubs and go shopping; (2) the SUV smelled strongly of raw marijuana; (3) the SUV contained several air fresheners; (4) McGee and Jackson had driven all night from California; (5) the SUV rental was due back "the very next day," which would have been a "long haul" from western Colorado; and (6) McGee and Jackson gave conflicting statements about the length of time that Jackson had been in the motorcycle club.

¶ 25 On appeal, McGee doesn't contest the court's factual findings. Rather, she asserts that such facts didn't amount to reasonable suspicion of criminal activity justifying the expanded scope and character of the stop, nor did they support Vrbas's decision to

extend the stop after he had completed his traffic-related objectives. Specifically, McGee asserts that Vrbas impermissibly "detour[ed]" from the traffic-related "mission" of the stop by asking McGee and Jackson detailed questions about their trip.

¶ 26 We conclude that the record supports the district court's determination that Vrbas had reasonable suspicion of criminal activity to justify the stop's expanded scope and character and its time extension. Vrbas had reasonable suspicion of criminal activity beyond the minor traffic violations even before he told McGee to exit her SUV — the earliest point that McGee says he began conducting investigatory tasks unrelated to her traffic violations. By that time, Vrbas had already noticed the smell of raw marijuana and the overwhelming odor of air fresheners. Viewed together, these facts provided Vrbas with reasonable suspicion of illegal drug activity that justified brief, additional investigation beyond McGee's traffic violations. *See People v. Brown*, 2022 CO 11, ¶ 26 (odor of burnt marijuana emanating from the defendant's car provided reasonable suspicion of criminal activity); *People v. Cervantes-Arredondo*, 17 P.3d 141, 149 (Colo. 2001) ("[T]he presence of a scent-masking

agent, coupled with other indicia of criminal activity, can support a reasonably brief inquiry.").

¶ 27　Upon further inquiry, Vrbas discovered more information that added to his reasonable suspicion. In particular, he learned that the SUV was rented, that McGee was driving across the country and back within a short time, and that she and Jackson had conflicting stories about Jackson's motorcycle club membership. *See People v. Bailey*, 2018 CO 84, ¶¶ 31-32 (driver providing "inconsistent information" and trooper's belief that "it was almost impossible" for the driver to travel "from Iowa to Las Vegas and then to Colorado" in three days, coupled with other circumstances, provided a "legitimate inference of criminal activity"); *see also United States v. Bracamontes*, 614 F.3d 813, 816 (8th Cir. 2010) (driver's and passenger's conflicting stories established requisite reasonable suspicion for further investigation).

¶ 28　Viewing the totality of these circumstances together, *Gamboa-Jimenz*, ¶ 40, we perceive no error in the district court's conclusion that Vrbas didn't unlawfully expand the scope and character of the stop or illegally extend its duration.

¶ 29    Even so, McGee argues that the district court erred by failing to make specific findings under the *Chavez-Barragan II* factors: (1) the length of the detention; (2) whether the officer diligently pursued the basis for the initial stop; (3) whether the suspect was required to move from one location to another; and (4) whether alternative, less intrusive means were available. *Chavez-Barragan II*, ¶ 22. But McGee doesn't point us to the location in the record where she made this argument to the district court. *See* C.A.R. 28(a)(7)(A). Moreover, the *Chavez-Barragan II* factors are "non-exhaustive," *White*, ¶ 43, and we're not permitted to reweigh the evidence on appeal. *See, e.g., People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29.

¶ 30    Even if we considered the *Chavez-Barragan II* factors based on the undisputed facts, they wouldn't change our conclusion. First, "'[t]he length of a valid investigatory stop is properly measured,' in part, by 'the time required . . . to diligently complete the investigation given the complexity of the situation.'" *White*, ¶ 44 (quoting *People v. Garcia*, 11 P.3d 449, 455 (Colo. 2000)). The district court found that the stop lasted eleven minutes before Vrbas asked for McGee's consent to search the SUV. Given the

13

investigatory tasks facing Vrbas, eleven minutes wasn't an unreasonable length of time. Moreover, as mentioned, Vrbas already had reasonable suspicion of drug trafficking by the earliest point that McGee says he detoured from traffic-related tasks. In short, Vrbas's questions unrelated to the traffic violations didn't "transform the traffic stop into a seizure of unreasonable duration." *Chavez-Barragan II*, ¶ 26.

¶ 31     Second, nothing in the court's findings or the dash cam footage suggests that Vrbas was less than diligent in pursuing the investigative purposes that justified the stop. *See White*, ¶ 48. He promptly explained the traffic violations to McGee and requested her license after approaching the SUV. And, as discussed, Vrbas obtained additional reasonable suspicion after approaching the SUV, beyond the minor traffic violations, based on the smell of raw marijuana and air fresheners.

¶ 32     Third, Vrbas's instruction that McGee move to the passenger side of his patrol car didn't render the stop unreasonable. *See Chavez-Barragan II*, ¶ 29 (police officer during a valid traffic stop may order the driver to exit their vehicle).

¶ 33     Finally, we agree with McGee that Vrbas had less-intrusive means available to investigate the traffic violations — for example, he could have asked McGee to remain in the SUV while he checked her driver's license.  But after he approached the SUV, Vrbas was no longer investigating *only* traffic violations; he also had reasonable suspicion of drug trafficking based on the smell of raw marijuana and air fresheners.  Under these circumstances, we fail to see any alternative, less intrusive means that were available to Vrbas.  Regardless, the supreme court's precedent doesn't "require the police to choose the least intrusive means of detention."  *White*, ¶ 53 (quoting *Garcia*, 11 P.3d at 455).

¶ 34     Accordingly, we detect no error in the district court's conclusion that Vrbas didn't unlawfully expand the scope and character of the stop or illegally extend its duration.

## D.    Consent

¶ 35     McGee also contends that her consent to search was involuntary because (1) Vrbas had ordered her out of her SUV; (2) she was being detained in a traffic stop; (3) a person in her situation wouldn't believe she could refuse Vrbas's search request,

in part because she knew the stop was pretextual; and (4) Vrbas failed to inform her that she could refuse consent.

### 1. Additional Applicable Law

¶ 36    A law enforcement officer may conduct a consensual search only after informing the person subject to the search that they are being asked to voluntarily consent to the search and have the right to refuse the request. § 16-3-310(1)(b), C.R.S. 2025. But an officer's failure to give this advisement is only one factor a court considers in determining the voluntariness of consent. § 16-3-310(3); *Chavez-Barragan II*, ¶ 38. The key question is whether law enforcement's intrusive conduct critically impaired the defendant's judgment. *Id.* at ¶ 39. Law enforcement's conduct must not overbear the defendant's will. *Id.* At the same time, the "fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." *Id.* at ¶ 43 (quoting *United States v. Watson*, 423 U.S. 411, 424 (1976)).

### 2. Analysis

¶ 37    We conclude that McGee's consent to search her SUV was voluntary. Though Vrbas should have given McGee the statutory advisement, no evidence suggested — and our independent review

16

of the dash cam footage doesn't reveal — that Vrbas used duress, coercion (express or implied), or any form of undue influence to induce McGee's consent. *See Chavez-Barragan II*, ¶ 37. To the contrary, the district court found that the interaction between Vrbas and McGee was "conversational" throughout the stop, that McGee was "extremely relaxed," and that Vrbas didn't make any threats or promises. *See id.* at ¶¶ 51-54. Moreover, McGee reaffirmed her consent to search after she informed Vrbas that she had marijuana gummies in the SUV. *See id.* at ¶ 54 (explaining the defendant "demonstrated his ongoing consent by volunteering to obtain the keys for officers to search the trailer").

¶ 38    We aren't persuaded otherwise by McGee's four contentions on appeal. We resolve her contentions as follows:

- Absent coercion not present here, an officer's order to exit the vehicle during a traffic stop doesn't render the driver's later consent to search involuntary. *See id.* at ¶ 54 (consent voluntary even though deputy moved the defendant to the interior of her patrol car).

- While we agree with McGee that the return of a driver's documents is necessary but not sufficient to establish

17

that an investigatory stop has ended, *see id.* at ¶ 41, the officer need not complete the stop for the driver's consent to be voluntary. *See id.* at ¶ 52 (consent voluntary even though officer asked for consent before completing traffic-related tasks). In any event, Vrbas had already returned McGee's documents when he asked for her consent to search. *See id.* at ¶ 41.

- Although some drivers may hesitate to decline an officer's request to search (because they subjectively believe the stop is pretextual or for other reasons), we must objectively assess whether, under the totality of the circumstances, the police conduct could have reasonably appeared coercive to a person with the defendant's knowledge and particular characteristics. *See Munoz-Gutierrez*, ¶ 23. Applying that standard, we see nothing coercive in Vrbas's interaction with McGee that would have rendered her consent involuntary. The district court found that (1) McGee's consent contained no hesitation or reluctance and (2) Vrbas applied no pressure, trickery, or coercion. We won't disturb these

18

findings because competent record evidence supports them. *See Gamboa-Jimenez*, ¶ 35.

- McGee is correct that Vrbas failed to inform her that she could legally refuse his request to search her SUV, contrary to Colorado law. *See* § 16-3-310(1)(b). But Vrbas's failure to provide this advisement is only one factor in the voluntariness analysis. *See* § 16-3-310(3); *Munoz-Gutierrez*, ¶¶ 26, 37 (consent voluntary even though troopers failed to inform driver they could refuse consent to search). Considering the totality of the circumstances, nothing suggests that Vrbas overbore McGee's will when seeking her consent. *See id.* at ¶ 37.

¶ 39 Accordingly, the district court didn't err by denying McGee's motion to suppress the drug evidence collected from her SUV.

## III. Opinion Evidence

¶ 40 McGee contends that Vrbas gave improper opinion testimony about safe following distances and that this testimony misled the jury on the law. We disagree.

## A. Additional Background

¶ 41     In the dash cam footage, which the prosecution played for the jury, Vrbas explained to McGee that she followed the semi-truck too closely before she passed it because she came as close as one second away from the back of the truck. McGee asked, "So what's the rule for that?" Vrbas responded that she "can't be closer than three seconds cause [sic] it takes the average person a second and a half to respond to something." Later, by the patrol car, McGee again sought clarification by asking, "So if I'm behind a truck does that mean I gotta stay how many feet away?" Vrbas replied, "You gotta be three seconds behind another vehicle, so you got as close as a second . . . you got up to at least a second behind the semi."

¶ 42     At trial, Vrbas testified consistently with the explanation that he provided to McGee during the traffic stop. He told the jury that McGee's SUV "got as close as a second behind [the] semi before it decided to change lanes and go to — to start safely passing that semi." When the prosecutor asked why he was concerned about that distance, Vrbas explained that

> the distances [sic] is — was concerning.
> Because, you know, through the accident
> reconstruction stuff that we do, it takes the

average person a second-and-a-half to perceive and react of — of something happening, like somebody putting on their brakes or something like that.

So if they're a second, then they've already run into the back of that semi before they've even had a chance to react. And that's a person who isn't under the influence of anything or tired. So that's concerning that it's — it's a safety issue they could run into the back of that semi if it — something was to happen.

B. Standard of Review and Applicable Law

¶ 43 We review a trial court's decision on the admissibility of evidence for an abuse of discretion. *People v. Baker*, 2021 CO 29, ¶ 29. "A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law." *Id.* Because McGee didn't object at trial to Vrbas's testimony or the dash cam footage, our review is limited to plain error. *Hagos v. People*, 2012 CO 63, ¶ 14. Plain error is error that is both obvious and substantial. *People v. Burdette*, 2024 COA 38, ¶ 32. To satisfy this standard, the error must so undermine the trial's fundamental fairness as to cast serious doubt on the reliability of the judgment of conviction. *Hoggard v. People*, 2020 CO 54, ¶ 13.

21

¶ 44    A driver may not "follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." § 42-4-1008(1).

¶ 45    "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." CRE 704. However, a witness may not testify that they believe the defendant committed the crime at issue. *People v. Penn*, 2016 CO 32, ¶ 31. But in some circumstances, a law enforcement officer "may testify about the reasons they took certain investigative steps, even where this testimony touches upon prohibited subjects." *Id.* at ¶ 32.

¶ 46    As relevant here, the trial court may exclude relevant evidence if the danger of misleading the jury substantially outweighs its probative value. CRE 403. In reviewing the trial court's decision, we assume the maximum probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected. *People v. Hood*, 2024 COA 27, ¶ 19.

## C. Analysis

¶ 47    We perceive no abuse of discretion in the district court's admission of Vrbas's statements regarding safe following distances. At trial, Vrbas testified about safe following distances and accident reconstruction to help explain to the jury why he was concerned about the close distance between McGee's SUV and the semi-truck. Vrbas's explanation of safe following distances to McGee in the dash cam footage, which the prosecution played for the jury, served the same purpose. In both instances, Vrbas's statements provided relevant and material context for his investigative actions. *See Penn*, ¶ 32.

¶ 48    Further, Vrbas never mentioned section 42-4-1008(1)'s "reasonable and prudent" legal standard, nor did he opine that McGee had violated that standard. *Cf. Baker*, ¶ 32 (identifying factors that courts consider in determining whether expert opinion testimony is admissible under CRE 704). In addition, the district court properly instructed the jury (1) on the applicable law; (2) that the court alone would instruct the jury on the applicable law; and (3) that the jury could accept or reject any part of a witness's testimony. *See id.*; *Washington v. People*, 2024 CO 26, ¶ 31

("Absent evidence to the contrary, we presume the jury understood and followed the court's instructions.").

¶ 49 We also aren't persuaded that the district court abused its discretion under CRE 403 by admitting this evidence. Vrbas's testimony and his statements on the dash cam footage were highly probative for the following too closely charge. Affording Vrbas's statements their maximum probative value and the minimum unfair prejudice to be reasonably expected, we perceive no abuse of discretion in the court's decision admitting this evidence. *See Hood*, ¶ 19.

¶ 50 Moreover, even if Vrbas's testimony or statements on the video crept close to the line, we can't say their admission so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See Hoggard*, ¶ 13.

¶ 51 We aren't convinced otherwise by McGee's reliance on *People v. Barrera*, 2022 CO 44. There, the supreme court explained that a driver's violation of the three-second rule[1] for following another

---

[1] The three-second rule, included in the Colorado Driver's Handbook, states that "a driver should follow another vehicle at a distance of at least three seconds." *People v. Barrera*, 2022 CO 44, ¶ 6.

vehicle — a "regulatory" rule — didn't supply reasonable suspicion that the driver had violated the lane-change statute, section 42-4-1007(1)(a), C.R.S. 2025.  *See Barrera*, ¶ 16.  The court reasoned that the lane-change statute "contains no such rule."  *Id.* But here, Vrbas didn't rely on the three-second rule when testifying about his reasonable suspicion that prompted the traffic stop. Rather, he mentioned the rule during the stop when responding to McGee's questions.  We discern nothing improper in a law enforcement officer mentioning a regulatory rule, even if not codified in statute, when answering a driver's question during a traffic stop.  In addition, Vrbas had other reasonable suspicion (the passing lane violation) unrelated to the three-second rule that justified the traffic stop, rendering *Barrera* even further afield.

¶ 52     Accordingly, we discern no error in the district court's admission of Vrbas's statements about safe following distances.

## IV.   Hearsay

¶ 53     McGee contends that Vrbas's testimony and statements in the dash cam footage about driver response times, quoted above, constituted inadmissible hearsay.  We see no reversible error.

## A.    Standard of Review and Applicable Law

¶ 54    Although we review a trial court's evidentiary rulings for an abuse of discretion, whether a statement constitutes hearsay is a legal conclusion that we review de novo. *People v. Schnorenberg*, 2023 COA 82, ¶ 10.  Because McGee didn't object to Vrbas's testimony or statements, our review is again limited to plain error. *Hagos*, ¶ 14.

¶ 55    Hearsay generally isn't admissible except as provided by rule or statute.  CRE 802.  Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  CRE 801(c).  A declarant is "a person who makes a statement."  CRE 801(b).  A statement is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person to be communicative."  CRE 801(a).

## B.    Analysis

¶ 56    We perceive no reversible error in the district court's admission of Vrbas's testimony about driver response times or his related statements in the dash cam footage.

26

¶ 57    Although McGee points to Vrbas's testimony about "accident reconstruction stuff," she doesn't identify any declarant or out-of-court statement within the meaning of CRE 801.  Instead, Vrbas generally described information about driver response times and accident reconstruction that he directly observed or learned firsthand through his experience and training.  Such personal perceptions aren't hearsay.  *See, e.g.*, *People v. Abad*, 2021 COA 6, ¶ 62.

¶ 58    To the extent McGee argues that Vrbas's related statements in the dash cam footage about driver response times constitute hearsay because he made them out of court, that presents a closer question.  But even if we assume that his recorded statements were inadmissible hearsay, we can't say that their admission so undermined the trial's fundamental fairness as to cast serious doubt on the reliability of the judgment of conviction.  *Hoggard*, ¶ 13.  Before the court admitted the video, Vrbas had already testified that the average person takes one and a half seconds to react to something on the road.  Thus, even if hearsay, Vrbas's statements on the video were "cumulative of other properly

admitted evidence." *People v. Caldwell*, 43 P.3d 663, 669 (Colo. App. 2001).

## V. Sentence Enhancement

¶ 59 McGee contends, the People concede, and we agree that the district court erred by imposing a separate conviction and sentence on the special offender count. As relevant here, the special offender statute, section 18-18-407(1)(c), increases the drug felony classification level when a defendant is found guilty of importing fourteen or more grams of cocaine into Colorado. "[T]he special offender statute is a sentence enhancing provision, not a substantive offense." *People v. Martinez*, 36 P.3d 201, 204 (Colo. App. 2001). "Trial courts may not enter a separate conviction or sentence on a count that is only a sentence enhancer." *People v. Torrez*, 2013 COA 37, ¶ 23.

¶ 60 Because the district court erred by entering the special offender sentence enhancement as a separate conviction, we vacate McGee's separate conviction and sentence on the special offender count and remand for the district court to correct the mittimus. *See Martinez*, 36 P.3d at 204 (where the mittimus reflects a conviction and separate sentence imposed on the special offender

charge as a substantive offense, the conviction and sentence must be vacated).

## VI.   Disposition

¶ 61   We affirm the judgment as to McGee's convictions for possession with intent to distribute a controlled substance and following too closely.  We vacate the separate conviction and sentence on the special offender count and remand the case to the district court with instructions to correct the mittimus.

JUDGE FOX and JUDGE KUHN concur.